BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: FORTRA FILE TRANSFER SOFTWARE DATA SECURITY BREACH LITIGATION | MDL DOCKET NO. |

**DEFENDANTS NATIONSBENEFITS, LLC AND NATIONSBENEFITS HOLDINGS, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS TO THE DISTRICT OF MINNESOTA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

GORDON REES SCULLY
MANSUKHANI, LLP

Joseph Salvo, Esq.
Brian Middlebrook, Esq.
John T. Mills, Esq.
Thomas Fanizzi, Esq.
Justin Holmes, Esq.
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: (212) 269-5500
Fax: (212) 269-5505
jsalvo@grsm.com
bmiddlebrook@grsm.com
jtmills@grsm.com
tfanizzi@grsm.com
jholmes@grsm.com

*Attorneys for Defendants NationsBenefits Holdings, LLC and NationsBenefits, LLC*

Defendants NATIONSBENEFITS HOLDINGS, LLC and NATIONSBENEFITS, LLC (collectively, "NationsBenefits"), by and through their undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Transfer and Centralization of Related Actions (as defined herein) to the District of Minnesota pursuant to 28 U.S.C. § 1407.  Defendants respectfully move that all Related Actions be transferred to a common jurisdiction, and that the common jurisdiction be the District of Minnesota, where U.S. District Judge Susan Richard Nelson has the first-filed action, and where the claims against FORTRA LLC ("Fortra"), the entity whose file transfer application was targeted by cyber-criminals in the Data Breach (as defined herein) that allegedly impacted all the Plaintiffs and Defendants in the Related Actions, are pending.

As detailed below, compelling logistical, legal and factual reasons justify consolidation and transfer to the District of Minnesota.  Indeed, the facts and circumstances surrounding these Related Cases are very similar to those that existed in the *In re MOVEit Customer Data Security Breach Litigation* cases that the Panel just found justified centralization and transfer. *See* No. MDL 3083, 2023 WL 6456749, at *2 (U.S. Jud. Pan. Mult. Lit. Oct. 4, 2023).  With cases filed throughout the country, the District of Minnesota is the most centrally-located of the forum districts.  Further, Fortra is headquartered in Minneapolis, Minnesota.  Accordingly, key witnesses and documents are likely to be found there.  Moreover, sitting in Minneapolis—a major hub for international business travel—the District of Minnesota has the resources necessary to devote the attention necessary to shepherd the Related Cases through the litigation process.  Centralization will prevent different courts around the country from arriving at contrary rulings regarding the proper scope of discovery, evidentiary issues, and substantive motions—including any motion on potential class certification.

## I. BACKGROUND

There are currently forty-six class action cases pending in seven federal judicial districts throughout the country (the "Related Actions"). *See* Schedule of Actions. The Related Actions all arise out of a cyber-attack that occurred in or around January 2023 wherein Fortra's "GoAnywhere" managed file transfer software (the "Software"), was targeted by a Russian-linked ransomware group, Clop, exploiting a zero-day (meaning a "then-unknown") vulnerability in the Software (the "Data Breach").

NationsBenefits, like most of the other Defendants in the Related Actions, is an entity that contracted with Fortra to license and use the Software (with the exception of Fortra itself which owns the Software). Defendants in the Related Actions are companies who do business in a variety of different sectors of the economy (the "Fortra Users"). NationsBenefits was named as a defendant in eighteen of these cases in the Southern District of Florida and that have been consolidated under the lead case, the *Skuraskis* Action. Further, NationsBenefits' clients have been named in several of the Related Actions pending in the Southern District of Indiana and the District of Connecticut.[1]

Of the remaining Related Actions with no direct relationship to NationsBenefits, four are in the Northern District of California, four are in the District of Connecticut, one is in the Southern District of Indiana, one is in the District of Minnesota (the only case expressly naming Fortra, the Software owner as a Defendant), seven are in the Northern District of Ohio and eight are in the Middle District of Tennessee. In addition to the consolidation efforts in the Southern District of Florida, consolidation of the Related Cases pending in California, Connecticut, Ohio and

---

[1] The claims against NationsBenefits in the Southern District of Indiana were severed and transferred to the Southern District of Florida. Additionally, several of the Related Actions which are pending in the District of Connecticut were originally commenced in the Southern District of Florida. In those cases, the claims against NationsBenefits' clients (Aetna) were severed and transferred to the District of Connecticut.

3

Tennessee has occurred in those respective jurisdictions. Further, given that over one-hundred entities were affected by the Data Breach and the full scope and extent of the Data Breach is unknown, additional tag-along cases are likely.

The Related Actions all arise out of a common nucleus of operative facts in that the Named Plaintiffs are all individuals who provided their Personal Identifying Information ("PII") or Protected Health Information ("PHI") to a Fortra User, and who allege that their PII and/or PHI was impacted by the Data Breach. Each of the Related Actions alleges failures to protect PII and/or PHI, pleads similar causes of action and damages, and seeks to certify similar or overlapping classes of individuals. Moreover, while Fortra is only named as a Defendant in one of the Related Actions, it is likely that Fortra will be named as a third-party Defendant in one or more of the Related Actions. Thus, for the reasons set forth herein, centralization and transfer pursuant to 28 U.S.C. § 1407 is appropriate.

## II.   ARGUMENT

### A.   Centralization and Transfer under 28 U.S.C. § 1407 is Warranted.

Section 1407 permits transfer and consolidation or coordination of cases that meet three requirements: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). Further, "the Panel's statutory mandate is to weigh the interests of all the plaintiffs and all the defendants, and to consider multidistrict litigation as a whole in light of the purposes of the law." *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1229 (J.P.M.L. 1977) (citing *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L.1968)).

Indeed, in the data breach context, the Panel has seen the benefits of granting centralization and transfer in a number of cases. *See e.g. In re T-Mobile 2022 Customer Data Security Breach Litig.*, 2023 WL 3829244 (J.P.M.L. 2023) (granting centralization and transfer in cases involving a data security breach of T-Mobile spread across eight district courts); *In re Samsung Customer Data Security Breach Litigation*; 2023 WL 1811247 (J.P.M.L. 2023) (finding that centralization was merited in cases involving a data breach of Samsung filed in four district courts); *In re MOVEit*, 2023 WL 6456749, at *2 (granting centralization for more than a hundred actions over twenty-two districts).

### 1. Common Issues of Fact Exist Across All the Related Actions.

Centralization is appropriate even where cases do not share a "complete identity or even [a] majority of common factual issues." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (citation omitted). Further, in the data breach context, the Panel has previously recognized that where, "the actions stem from the same data breach, and there is significant overlap in the central factual issues, parties, proposed classes, and claims . . . creation of a single MDL is warranted." *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (granting centralization).[2] Even if the Related Actions involve claims against a number of different

---

[2] *See also e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections. . . ."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("Here, all actions stem from the same data breach, and we are persuaded that discovery concerning the breach, how and when it was identified, what security measures 21st Century had in place for securing patient data, and what steps it took after discovery of the breach will be common among the . . . actions and is likely to be complex and time-consuming.").

downstream entities who made use of the same vulnerable Software, that does not change that the Data Breach is "at the core of all cases." *In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749, at *2.

Here, the Related Actions all arise out of the Fortra Data Breach, and claims are related to defendants' data security measures related to the Fortra Software, defendants' responses to the Data Breach, and notification provided to potentially impacted individuals related to the Data Breach. Further, the Related Actions share common questions of fact with regards to the impact of the Data Breach on the purported classes of individuals affected—the aggregate of which is likely to encompass any individual who's PII and/or PHI was affected by the Data Breach, regardless of which Fortra User licensed the Fortra Software. Indeed, while the users of the Fortra Software may differ from case to case, every entity that used the Fortra Software was impacted on account of Russian hackers exploiting the zero-day vulnerability that resulted in the Data Breach. Consequently, similar defenses are likely to be raised by each defendant at the motion to dismiss, class certification, and summary judgment stages—providing another strong basis for centralization. *See, e.g., In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d 1366, 1367 (J.P.M.L. 2014) (noting actions will involve similar defenses); *In re Nebivolol (%2C040) Patent Litig.*, 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (similar) *In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749, at *2 ("Plaintiffs are individuals whose PII was potentially compromised who bring largely overlapping putative nationwide or statewide class actions on behalf of persons impacted by the exploitation of the MOVEit software vulnerability. All actions can be expected to share common and complex factual questions as to how the MOVEit vulnerability occurred, the circumstances of the unauthorized access and data exfiltration, and Progress's response to it, as well as the response of

6

various downstream MOVEit users and customer-facing defendants with whom plaintiffs did business.")

### 2. Centralization will Promote Judicial Efficiency and Encourage the Parties to Avoid Unnecessary and Duplicative Discovery.

Centralization is appropriate where it will, "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary." *In re KeyBank Customer Data Sec. Breach Litig.*, 2023 WL 1811824, at *1 (J.P.M.L. Feb. 1, 2023); *see also, In re SoClean, Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.,* 585 F. Supp. 3d 1355, 1356 (J.P.M.L. 2022) (similar).

In all the Related Actions, the cases are still in their infancy, and none have moved into the discovery phase. Transfer and centralization will prevent witnesses from having to testify in numerous actions across the country, prevent Plaintiffs and Defendants from serving and responding to repetitive discovery requests (serving to significantly lower the cost of litigation for all parties), conserve judicial resources by avoiding more than one court ruling on the same discovery disputes, and avoid the possibility of conflicting rulings among tribunals on discovery and substantive motions.[3] Having the cases centralized will also allow for one coordinated case management order providing for the filing of dispositive motions and the issuance of a well-considered discovery plan that would avoid unnecessary and/or duplicative efforts by Plaintiffs and Defendants, and would avoid multiple courts from engaging in that time-intensive process. *See In re U.S. Foodservice, Inc., Pricing Litig.*, 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007)

---

[3] *See e.g. In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 2023 WL 3829244, at *1 (J.P.M.L. June 2, 2023) (centralization of data breach cases serves to "prevent inconsistent pretrial rulings, including with respect to class certification"); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("[c]entralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification)"); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–93 (J.P.M.L. 1968) (denying centralization, "would make possible, and perhaps probable, pretrial chaos in conflicting class action determinations which Section 1407 was designed to make impossible.").

(centralization allows experienced Judge to "formulate a pretrial discovery program" tailored to common facts, but to also "allow[s] discovery . . . [on] non-common issues to proceed concurrently with discovery on common issues.").

### 3. The Existence of a Number of Different Defendants Does Not Undermine the Need for Centralization.

Given that the Related Actions arise out of the same core facts, as the Panel has recognized in the past, the fact that there are a number of different and distinct defendants in the Related Cases does not prevent centralization. *See In re FTX Cryptocurrency Exch. Collapse Litig.,* 2023 WL 3829242, at *2 (J.P.M.L. June 5, 2023) (granting centralization where the cases, "all rest on the same core set of facts" even though the underlying actions "undoubtedly involve several non-overlapping defendants and raise defendant specific issues."); *see also In re Uber*, 304 F. Supp. 3d at 1354 (granting centralization of data breach actions including sole action involving co-defendant); *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, 338 F. Supp. 3d 1347, 1349 n. 2 (J.P.M.L. 2018) (granting centralization even where defendants' argued that they "will suffer prejudice from centralization because their case-specific facts will be 'lost in the mix' with hundreds of other defendants"); *In re. Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1365–66 (J.P.M.L. 2013) ("although we agree that these actions present some individualized factual issues, the existence of such issues does not negate the common ones").

Indeed, in the context of a large multi-defendant data breach, the Panel has previously recognized that centralization was appropriate, and it should do so again here. *See, e.g. In re MOVEit,* 2023 WL 6456749, at *2)* ("Although no single defendant is named in all cases, we are of the opinion that the parties can obtain significant efficiencies by placing all actions concerning the vulnerabilities in the MOVEit software before a single judge."*), In re Blackbaud, Inc., Customer Data Sec. Breach Litig.,* 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020) (Panel granted

8

centralization where the cases "present[ed] common factual questions concerning an alleged . . . breach of Blackbaud's systems . . . that allegedly compromised the personal information of millions of consumers doing business with entities served by Blackbaud's cloud software and services."); *see also In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (recognizing that "a single, multi-defendant MDL" "[was] necessary to ensure the just and efficient conduct of this litigation.").

Here, there is an interconnectedness among defendants because, even where Fortra is not a named defendant, NationsBenefits intends to bring third-party claims against Fortra should any of Plaintiffs' claims survive past the pleading stage—and NationsBenefits is very likely not alone in taking that position. *See e.g., In re MOVEit*, 2023 WL 6456749, at *2 (discussing the "interconnectedness among defendants" based on Defendants intent to bring third party claims against Progress who's software was at the root of the data breach). As the Panel found in the *MOVEit* case, unlike in *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372, 1374 (J.P.M.L. 2021) where the Panel denied centralization, where the Software at the root of the Data Breach is an active product affecting different sectors of the economy, and every case is likely to pose significant questions about the role of Fortra—centralization and transfer is appropriate. *See In re MOVEit*, 2023 WL 6456749, at *3.

> **4. Informal Coordination Efforts or Transfer under Section 1404 will not Provide for the Consistent Rulings and Better Use of Judicial Resources that Centralization Will Guarantee.**

In these cases there is no "reasonable prospect" that motions for transfer under Section 1404 will "eliminate the multidistrict character of the litigation." *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380–81 (J.P.M.L. 2013). As discussed above, there are twenty-five Related Actions in which NationsBenefits is not a named defendant.

While informal consolidation of the Related Actions has happened across five of the seven jurisdictions currently at play, that means there are seven different jurisdictions around the country expending resources, providing for discovery, and issuing rulings all born out the Fortra Data Breach.  Informal coordination has gone as far as is possible, and with different parties having little or no connection to the different jurisdictions, further transfer of these cases under Section 1404 is very unlikely; as is the possibility for coordination among that many different district courts.

Further, there remains the very real likelihood of additional tag-along cases given the scope of the Fortra Data Breach.  As the Panel in *Schnuck Markets* noted, the uncertain and discretionary nature of Section 1404 and the possibility for additional tag-along cases weighed in favor of centralization.  *Id.*; *see also In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) (granting transfer and finding that with "more than two million patients affected by the data breach, additional tag-along actions also may be forthcoming" making informal coordination not feasible). Here, centralization and transfer is the only way to avoid the unnecessary expenditure of judicial resources, provide for the convenience of the parties and witnesses, and promote the just and efficient conduct of the actions.  *See In re Generic Pharm. Pricing Antitrust Litig,* 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017) ("informal coordination and cooperation among the parties and courts" is not "sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations").

**B.     The District of Minnesota is the Most Appropriate Transferee District.**

In analyzing what district is most appropriate for transfer, the Panel considers a number of factors, but gives strong weight to (1) where the "center of gravity" for a litigation resides and (2) the current docket of the transferee forum and its ability to properly handle an MDL.  *See, e.g., In re Nine W. LBO Sec. Litig.,* 464 F. Supp. 3d 1383, 1385 (J.P.M.L. 2020) (finding transfer to a

district that was "litigation's center of gravity" appropriate even though no actions were pending there); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1364 (J.P.M.L. 2018) (transfer to district where Facebook is headquartered and relevant evidence and witnesses are likely to be located).

### 1. Fortra is at the Center of the Data Breach and is Located in Minneapolis, Minnesota.

Regardless of whether Fortra itself is a named Defendant in a given matter, the Data Breach arose out of the vulnerability that existed in the Fortra Software, which was then employed by the Fortra Users in connection with their retention of PII and/or PHI for the Named Plaintiffs. Accordingly, in all of the Related Cases relevant witnesses and evidence are going to be most centralized in the location where Fortra is headquartered—Minneapolis. Therefore, the Panel should recognize that the "center of gravity" for the Data Breach and the Related Cases, and the location with the strongest "nexus" to the cases is the District of Minnesota. *See, e.g., In re MOVEit*, 2023 WL 6456749, at *3 (ordering transfer to the district where the owner of the vulnerable software was located, and where relevant witnesses and documents were likely to be found), *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (district where documents and witnesses likely to be found and where defendant was headquartered had "significant nexus to the litigation"); *In re Nine W.*, 464 F. Supp. 3d at 1385 (same); *In re Marriott Int'l, Inc.*, 363 F. Supp. 3d at 1374–75 (creating a MDL involving a data breach in the district where defendant "is headquartered . . . and relevant documents and witnesses thus likely will be found there").

11

### 2. The District of Minnesota Has the Appropriate Resources to Handle the MDL.

The District of Minnesota (the "District") has the resources and experience necessary to effectively manage this multi-district litigation. As of September 15, 2023, there were a total of six MDL's pending in the District—demonstrating that the district has MDL experience, but is not overwhelmed with its current case load.[4] Indeed, from June of 2022 to June of 2023, the District demonstrated itself to be an efficient jurisdiction where the median time from filing to disposition of civil actions averaged 6.9 months in comparison to the overall national median time of 10.4 months.[5] During that same time period, the District has proven to be especially proficient at getting civil cases to resolution as only 3.2% of its civil cases are more than three years old, as compared to the national total of 33.5% of civil cases that have gone beyond that three-year mark.

Further, Judge Susan Richard Nelson in the District is already assigned to the first-filed *Anderson* Action demonstrating her familiarity with the subject matter at issue. *See, e.g. In re German Auto. Manufacturers Antitrust Litig.*, 278 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) (transferring actions to judge presiding over action with potentially overlapping facts); *In re Glob. Crossing Ltd. Sec. Litig.*, 341 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (transferring actions to jurist "likely familiar with [the defendant's] business and operations"). Judge Nelson is an experienced jurist who has served in the District of Minnesota for the last thirteen years, and during that time she has sat on several data breach cases, demonstrating her familiarity with the subject matter. *See, In re: Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-1210 (D.

---

[4] *See* MDL Statistics Report – Distribution of Pending MDL Dockets by District, September 15, 2023 available at, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2023.pdf

[5] *See* U.S. District Courts – Federal Court Management Statistics – Profiles available at, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf

Minn.); *French v. Radius Global Solutions, LLC*, No. 0:23-cv-02992 (D. Minn).[6]

From an administrative standpoint, the District is also an advantageous location. Minneapolis, where the District sits, is centrally located in the country, and features an international airport making travel to and from that location convenient for counsel and potential witnesses. Accordingly, the District has the resources and experience necessary to handle the MDL, and centralization of the Related Cases in the District of Minnesota before Judge Nelson or some other Minnesota District Judge is appropriate.

---

[6] The *French* case is related to the "Move-It" data security incident which the Panel just granted centralization and transfer to the District of Massachusetts.

### III. CONCLUSION

Given the common nucleus of operative fact at the heart of all the Related Actions, the similarity of legal and factual issues to be explored throughout the course of the litigation, and the need to avoid duplicative discovery and prevent inconsistent rulings, centralization is appropriate. Accordingly, NationsBenefits respectfully requests that the Panel transfer the Related Actions for centralization in the District of Minnesota.

Dated:     October 16, 2023

    Respectfully Submitted,

    GORDON REES SCULLY MANSUKHANI, LLP

    s/Joseph Salvo_____
    Joseph Salvo, Esq.
    Brian Middlebrook, Esq.
    John T. Mills, Esq.
    Thomas Fanizzi, Esq.
    Justin M. Holmes, Esq.
    One Battery Park Plaza, 28th Floor
    New York, New York 10004
    Tel: (212) 269-5500
    Fax: (212) 269-5505
    jsalvo@grsm.com
    bmiddlebrook@grsm.com
    jtmills@grsm.com
    tfanizzi@grsm.com
    jholmes@grsm.com

    *Attorneys for Defendants NationsBenefits Holdings, LLC and NationsBenefits, LLC*