ADRMOP,CLOSED,RELATE,STAYED

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:23−cv−02909−WHA

Castro v. Brightline, Inc.
Assigned to: Judge William Alsup
Demand: $5,000,000,000
Lead case: 3:23−cv−02132−WHA
Member case: (View Member Case)
Cause: 28:1332 Diversity−Breach of Contract

Date Filed: 06/13/2023
Date Terminated: 08/29/2023
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Kyle Castro**
*as father and next friend of E.N.C., C.J.C. and E.J.C.*

represented by **Michael J. Wall**
Herzfeld, Suetholz, Gastel, Leniski and Wall PLLC
223 Rosa L. Parks Ave
Ste 300
Nashville, TN 37203
615−800−6225
Fax: 615−994−8625
Email: michael@hsglawgroup.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter James Jannace**
Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC
515 Park Avenue
Louisville, KY 40208
646−783−9810
Email: peter@hsglawgroup.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caren P. Sencer**
Weinberg, Roger & Rosenfeld
A Professional Corporation
1375 55th Street
Emeryville, CA 94608
(510) 337−1001
Fax: 510−337−1023
Email: csencer@unioncounsel.net
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Brightline, Inc.**

represented by **Anne Margaret Voigts**
King & Spalding LLP
601 South California Avenue, Suite 100
Palo Alto, CA 94304
(650) 422−6710
Fax: (650) 422−6800
Email: avoigts@kslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| | | |
|---|---|---|
| 06/13/2023 | 1 | COMPLAINT against Brightline, Inc. ( Filing fee $ 402, receipt number ACANDC–18355630.). Filed byBrightline, Inc.. (Attachments: # 1 Civil Cover Sheet)(Sencer, Caren) (Filed on 6/13/2023) (Entered: 06/13/2023) |
| 06/13/2023 | 2 | Proposed Summons. (Sencer, Caren) (Filed on 6/13/2023) (Entered: 06/13/2023) |
| 06/13/2023 | 3 | Case assigned to Magistrate Judge Thomas S. Hixson. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E–Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 6/27/2023. (as, COURT STAFF) (Filed on 6/13/2023) (Entered: 06/13/2023) |
| 06/13/2023 | 4 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 9/7/2023. Initial Case Management Conference set for 9/14/2023 at 10:00 AM in San Francisco, Courtroom E, 15th Floor. (wsn, COURT STAFF) (Filed on 6/13/2023) (Entered: 06/13/2023)** |
| 06/13/2023 | 5 | Summons Issued as to Brightline, Inc. (wsn, COURT STAFF) (Filed on 6/13/2023) (Entered: 06/13/2023) |
| 06/15/2023 | 6 | SUMMONS Returned Executed by Kyle Castro. Brightline, Inc. served on 6/14/2023, answer due 7/5/2023. (Sencer, Caren) (Filed on 6/15/2023) (Entered: 06/15/2023) |
| 06/20/2023 | 7 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC–18373350.) filed by Kyle Castro. (Attachments: # 1 Certificate of Good Standing KY, # 2 Certificate of Good Standing US DC WD KY)(Jannace, Peter) (Filed on 6/20/2023) (Entered: 06/20/2023) |
| 06/20/2023 | 8 | **ORDER by Magistrate Judge Thomas S. Hixson granting 7 Motion for Pro Hac Vice. (rmm2, COURT STAFF) (Filed on 6/20/2023) (Entered: 06/20/2023)** |
| 06/27/2023 | 9 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC–18395939.) filed by Kyle Castro. (Attachments: # 1 Certificate of Good Standing TN)(Wall, Michael) (Filed on 6/27/2023) (Entered: 06/27/2023) |
| 06/27/2023 | 10 | **ORDER by Magistrate Judge Thomas S. Hixson granting 9 Motion for Pro Hac Vice. (rmm2, COURT STAFF) (Filed on 6/27/2023) (Entered: 06/27/2023)** |
| 06/27/2023 | 11 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Kyle Castro.. (Jannace, Peter) (Filed on 6/27/2023) (Entered: 06/27/2023) |
| 06/27/2023 | 12 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE–NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. *This is a text only docket entry; there is no document associated with this notice.* (rmm2, COURT STAFF) (Filed on 6/27/2023) (Entered: 06/27/2023) |
| 06/28/2023 | 13 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Vince Chhabria for all further proceedings. Magistrate Judge Thomas S. Hixson no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.** |

| | | |
|---|---|---|
| | | Signed by Clerk on 06/28/2023. (Attachments: # 1 Notice of Eligibility for Video Recording)(mbc, COURT STAFF) (Filed on 6/28/2023) (Entered: 06/28/2023) |
| 06/28/2023 | 14 | REASSIGNED CASE – NOTICE OF NEW HEARING DATE:<br><br>You are notified that the Court has scheduled an Initial Case Management Conference before Judge Vince Chhabria upon reassignment. For a copy of Judge Chhabria's Standing Order and other information, please refer to the Court's website at www.cand.uscourts.gov.<br><br>Joint Case Management Statement due by 9/8/2023.<br>Initial Case Management Conference set for 9/15/2023 at 10:00 AM by Videoconference Only. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/vc<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. One list of names of all counsel appearing for all parties must be sent in one email to the CRD at vccrd@cand.uscourts.gov no later than Friday, September 8, 2023 by no later than 12:00PM.<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text–only entry generated by the court. There is no document associated with this entry.)*(bxs, COURT STAFF) (Filed on 6/28/2023) (Entered: 06/28/2023) |
| 06/28/2023 | 15 | PROOF OF SERVICE by Kyle Castro re 12 Clerk's Notice of Impending Reassignment – Text Only, 14 Clerk's Notice, Util – Teleconference Zoom, 13 Order Reassigning Case,,, Case Assigned/Reassigned, 11 Consent/Declination to Proceed Before a US Magistrate Judge (Sencer, Caren) (Filed on 6/28/2023) (Entered: 06/28/2023) |
| 06/29/2023 | 16 | NOTICE of Appearance by Anne Margaret Voigts *, Counsel on Behalf of Defendant Brightline, Inc.* (Voigts, Anne) (Filed on 6/29/2023) (Entered: 06/29/2023) |
| 06/29/2023 | 17 | JOINT STIPULATION re 6 Summons Returned Executed *Joint Stipulation For Extension Of Time To Respond To Complaint –– Response Date: August 4, 2023* filed by Brightline, Inc.. (Voigts, Anne) (Filed on 6/29/2023) Modified on 6/30/2023 (kmg, COURT STAFF). (Entered: 06/29/2023) |
| 06/29/2023 | 18 | Certificate of Interested Entities by Brightline, Inc. identifying Other Affiliate Kevin Miller, Other Affiliate Ann Lamont, Other Affiliate Oak HC/FT Partners III, L.P., Other Affiliate KKR Bluebird Aggregator L.P., Other Affiliate Threshold Ventures III, L.P., Other Affiliate GV 2021, L.P., Other Affiliate Emily Melton, Other Affiliate Ben Robbins, Other Affiliate Johnny Kim, Other Affiliate Naomi Allen, Other Affiliate Giovanni Colella, Other Affiliate Gary Alpert, Other Affiliate David Grodberg, Other Affiliate Aleksandra Peters, Other Affiliate Romy Saloner, Other Affiliate Myra Altman, Other Affiliate Amy Chen, Other Affiliate Sarah Weatherhead, Other Affiliate Haleigh Tebben for Brightline, Inc.. (Voigts, Anne) (Filed on 6/29/2023) (Entered: 06/29/2023) |
| 06/29/2023 | 19 | DEFENDANT BRIGHTLINE, INC.S CORPORATE DISCLOSURE STATEMENT Rule 7.1 Disclosures by Brightline, Inc. (Voigts, Anne) (Filed on 6/29/2023) Modified on 6/30/2023 (kmg, COURT STAFF). (Entered: 06/29/2023) |
| 07/25/2023 | 20 | **ORDER GRANTING PLAINTIFFS' MOTION TO CONSOLIDATE. Signed by Judge William Alsup on 7/25/2023. (afm, COURT STAFF) (Filed on 7/25/2023) (Entered: 07/25/2023)** |

| 07/25/2023 | 21 | **ORDER REASSIGNING CASE. Case reassigned to Judge William Alsup for all further proceedings. Judge Vince Chhabria no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 7/25/2023. (Attachments: # 1 Notice of Eligibility for Video Recording)(ark, COURT STAFF) (Filed on 7/25/2023) (Entered: 07/25/2023)** |
|---|---|---|
| 08/28/2023 | | Set/Reset Deadlines as to (29 in 3:23−cv−02132−WHA) MOTION to Appoint Counsel , (31 in 3:23−cv−02132−WHA) MOTION to Appoint Lead Plaintiff and Lead Counsel *Plaintiff Kyle Castro's Application for Leadership Appointment*, (30 in 3:23−cv−02132−WHA) MOTION to Appoint Counsel *as Interim Co−Lead Counsel, the firms of Morgan & Morgan Complex Litigation Group and Glancy, Prongay & Murray LLP*. Motion Hearing reset for 9/14/2023 11:00 AM in San Francisco, Courtroom 12, 19th Floor before Judge William Alsup. (afm, COURT STAFF) (Filed on 8/28/2023) (Entered: 08/28/2023) |
| 08/29/2023 | 22 | Remark: All filings to be made in master case: 3:23−cv−02132−WHA / Rosa et al v. Brightline, Inc. (afm, COURT STAFF) (Filed on 8/29/2023) (Entered: 08/29/2023) |
| 09/13/2023 | 23 | **Minute Entry for proceedings held before Judge William Alsup:**<br><br>**Motion Hearing held on 9/13/2023 re Motions to Appoint Counsel. Parties proffered argument. Court takes motions under submission. Written order to issue.**<br><br>**Total Time in Court: 10:04 − 10:41 = 37 Minutes.**<br>**Court Reporter: Kelly Shainline.**<br><br>**Plaintiff Attorneys: John Yanchunis, Brian Murray, Caren Sencer, Peter Jannace.**<br>**Defendant Attorney: Sam Diamant.**<br><br>***(This is a text−only entry generated by the court. There is no document associated with this entry.)*** **(afm, COURT STAFF) (Date Filed: 9/13/2023) (Entered: 09/13/2023)** |

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KYLE CASTRO, as father and next friend of E.N.C., C.J.C. and E.J.C., minors, individually, and on behalf of themselves and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
CAREN P. SENCER, Bar No. 233488, Weinberg, Roger & Rosenfeld, 1375 55th Street, Emeryville, California 94608, Telephone (510) 337-1001, Fax (510) 337-1023, csencer@unioncounsel.net, courtnotices@unioncounsel.net

## DEFENDANTS

BRIGHTLINE, INC.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | | 710 Fair Labor Standards Act | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 370 Other Fraud | 751 Family and Medical Leave Act | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 790 Other Labor Litigation | | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | 385 Property Damage Product Liability | | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | | **IMMIGRATION** | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation–Transfer ☐ 8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 (d)(2)
Brief description of cause:
Negligence, invasion of privacy and breach of contract

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

**DEMAND $** 5,000,000.01

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE | DOCKET NUMBER 23-cv-02132; 23-cv-02291; 23-cv-02503

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

*(Place an "X" in One Box Only)* ☒ SAN FRANCISCO/OAKLAND ☐ SAN JOSE ☐ EUREKA-MCKINLEYVILLE

DATE June 13, 2023 SIGNATURE OF ATTORNEY OF RECORD /s/ Caren P. Sencer

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name and standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

  (1)  United States plaintiff. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

  (2)  United States defendant. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

  (3)  Federal question. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

  (4)  Diversity of citizenship. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.  **Origin.** Place an "X" in one of the six boxes.

  (1)  Original Proceedings. Cases originating in the United States district courts.

  (2)  Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

  (3)  Remanded from Appellate Court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

  (4)  Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

  (5)  Transferred from Another District. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

  (6)  Multidistrict Litigation Transfer. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

  (8)  Multidistrict Litigation Direct File. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

  Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

IX.  **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Michael J. Wall (*To be admitted Pro Hac Vice*)
michael@hsglawgroup.com
Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC
223 Rosa L. Parks Avenue
Suite 300
Nashville, Tennessee 37203
Tel: (615) 800-6225

Peter J. Jannace (*To be admitted Pro Hac Vice*)
peter@hsglawgroup.com
Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC
515 Park Avenue
Louisville, Kentucky 40208
Tel: (502) 636-4333

CAREN P. SENCER, Bar No. 233488
Weinberg, Roger & Rosenfeld
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  csencer@unioncounsel.net
            courtnotices@unioncounsel.net

*Attorneys for Plaintiff Kyle Castro, as father and next friend of E.N.C., C.J.C. and E.J.C.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KYLE CASTRO, as father and next friend of E.N.C., C.J.C. and E.J.C., minors, individually, and on behalf of themselves and all others similarly situated, | Case No. _____ |
| *Plaintiff,* | **COMPLAINT**<br>**CLASS ACTION**<br>**DEMAND FOR JURY TRIAL** |
| v. | |
| BRIGHTLINE, INC., | |
| *Defendant,* | |

Plaintiff, Kyle Castro ("Plaintiff"), as father and next friend of E.N.C., C.J.C.

4869-7254-3845, v. 8

and E.J.C., minors, individually, on behalf of themselves and all others similarly situated, brings this action against Defendant BRIGHTLINE, INC., and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action seeking monetary damages and injunctive and declaratory relief from Brightline, Inc., ("Brightline"), arising from its failure to safeguard certain Personally Identifying Information[1] and Protected Health Information[2] (collectively, "PII") of hundreds of thousands of its patients. Consequently, those patients' PII—including their names, addresses, dates of birth,

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, Plaintiff is not asserting that every example of identifying information was compromised in the Data Breach.

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.* ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information.* A "covered entity" is further defined as, *inter alia*, a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA. *Id. Covered entity.* Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, Dep't for Health & Hum. Servs., https://www.hhs.gov/hipaa /for-professionals/privacy/laws-regulations/index.html (last accessed Apr. 16, 2020). Brightline is clearly a "covered entity" and the data compromised in the Data Breach that this action arises out of is "protected health information", subject to HIPAA.

4869-7254-3845, v. 8

member identification numbers, date of health plan coverage, and/or employer names—has been compromised.[3]

2. On or about January 30, 2023, one of Brightline's vendors, Fortra, "was made aware of suspicious activity within its GoAnywhere MFT Service…" which resulted in "an unauthorized party… gain[ing] access to certain Fortra customers' accounts and download[ing] files, including" confidential and sensitive PII for 964,300[4] current and former patients of Brightline (the "Data Breach").[5]

3. As will be more fully explained below, Plaintiff and members of the Class have been significantly injured by the Data Breach and have incurred out-of-pocket expenses associated with the reasonable mitigation measures they were forced to employ. Plaintiff and the Class also now forever face an amplified risk of fraud and identity theft due to their sensitive PII falling into the hands of cybercriminals.

4. On behalf of himself and the Class preliminarily defined below, Plaintiff brings causes of action sounding in negligence, *per se* negligence, invasion of privacy, breach of confidence, breach of contract, including breach of the covenant of good faith and fair dealing, trespass to chattels, bailment, violations of the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*, California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*, California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*, unjust enrichment, and conversion. Plaintiff seeks damages and injunctive and declaratory relief

---

[3] *Notice of Fortra Data Security Incident*, BRIGHTLINE, INC., *available at* https://www.hellobrightline.com/fortra-data-notice (last accessed May 19, 2023). Plaintiff also received similar letters from Brightline for three of his children, which are attached hereto.
[4] *Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE FOR CIVIL RIGHTS, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed June 16, 2020).
[5] *Notice of Fortra Data Security Incident*, *supra* note 3.

arising from Brightline's failure to adequately protect his children's highly sensitive PII.

## PARTIES

5.     Plaintiff Kyle Castro is a natural person and resident of Nashville, Tennessee, where he intends to remain. Plaintiff's children E.N.C., C.J.C. and E.J.C.'s PII was stored on Brightline's data systems at all times material hereto. Since E.N.C., C.J.C. and E.J.C. are all minors, they lacks capacity to bring this civil action. Plaintiff is truly dedicated to his children's interests as their father, and brings this action as their father and next friend herein.

6.     Defendant Brightline, Inc. is a Delaware Corporation which provides mental and behavioral health services, including virtual counseling for children, teenagers and their families, with its principal place of business located at 400 Concar Drive, San Mateo, California 94402.

## JURISDICTION

7.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because it is brought on behalf of a proposed class with at least 100 members for whom the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and Plaintiff and other members of the class are citizens of a State and/or States different from Brightline.

8.     This Court has general personal jurisdiction over Brightline because Brightline's principal place of business is in California, and it regularly transacts business within the State.

## VENUE

9.     Venue is proper in this Court under 28 U.S.C. §§ 1391(a)(2), (b)(2) & (c)(2) because a substantial part of the events giving rise to the claims arise from Brightline's business activities in this District.

4869-7254-3845, v. 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DIVISIONAL ASSIGNMENT

10.     This action is properly assigned to either the San Francisco Division or the Oakland Division because it arises from events or omissions that transpired in San Mateo County.

## FACTUAL ALLEGATIONS

**A. Plaintiff and the Class Members entrusted their PII to Brightline**

11.     Plaintiff and the members of the Class are individuals who entrusted their PII and their children's PII to Brightline.

12.     As a condition for receiving pediatric behavioral health and/or benefit eligibility, Class members were required by Brightline to confide and make available to it, its agents, and its employees, sensitive and confidential PII, including, but not limited to, names, addresses, dates of birth, member identification numbers, date of health plan coverage, and/or employer names.

13.     Brightline acquired, collected, and stored a massive amount of PII of its patients.

14.     By obtaining, collecting, using, and deriving a benefit from those individuals' PII, Brightline assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting their PII from unauthorized disclosure.

15.     Plaintiff has taken reasonable steps to maintain the confidentiality of his children's PII. Plaintiff, as a parent, relied on Brightline to keep his children's PII confidential and securely maintained, to use that information for business purposes only, and to make only authorized disclosures of that information.

16.     Indeed, Brightline maintains a policy which specifically acknowledges its legal obligation to maintain the privacy of patient PII entrusted to it and to only disclose such information under limited circumstances, none of which were present here.

Class Action Complaint

4869-7254-3845, v. 8

17.     Brightline's policy is outlined in its Notice of Privacy Practices (Brightline's "Privacy Policy"), which became effective on January 1, 2023.[6]

18.     In its Privacy Policy, Brightline represents that "the protection of [its patients'] health information is very important to" it, and that it is required by law to maintain the privacy of health information, to provide [its patients] with notice of [its] legal duties and privacy practices with respect to [their] health information, and to notify affected individuals following a breach of unsecured health information."[7] Brightline's Privacy Policy goes on to circumscribe the way patients' PII can and cannot be disclosed to, *inter alia*, third parties.[8] The Data Breach that is the subject of this civil action is not contemplated or permitted by Brightline's Privacy Policy.

19.     Plaintiff entrusted his children's PII to Brightline solely for the purpose of attaining pediatric behavioral health services and arranging the payment therefor with the expectation and implied mutual understanding that Brightline would strictly maintain the confidentiality of that information and safeguard it from theft or misuse.

20.     Plaintiff would not have entrusted Brightline with his children's highly sensitive PII if he had known that Brightline would not maintain it securely and protect it from unauthorized use or disclosure.

**B. The security of patients' PII was compromised in the Data Breach**

21.     Plaintiff's minor children was a patient of Brightline.

22.     Prior to and/or contemporaneously with utilizing Brightline's services, its agents provided Plaintiff with various disclosure statements regarding Brightline's Privacy Policy and its obligations under HIPAA to safeguard patients'

---

[6] *Notice of Privacy Practices*, BRIGHTLINE, INC., (Jan. 1, 2023), *available at* https://www.hellobrightline.com/privacy-practices.
[7] *Ibid.*
[8] *Ibid.*

Class Action Complaint

PII–as Brightline was required to do by law.[9]

23.　As a prerequisite to receiving pediatric behavioral health services from Brightline, Plaintiff divulged his children's personal and sensitive PII to it, with the implicit understanding that their PII would be kept confidential. This understanding was based on all the facts and circumstances attendant to her receiving care, and the express, specific, written representations made by Brightline and its agents.

24.　Plaintiff reasonably relied upon Brightline's representations to his and his children's detriment and would not have provided her sensitive PII to Brightline but for Brightline's explicit and implicit promises to adequately safeguard that information.

25.　On or about April 7, 2023, Brightline notified Plaintiff and all Class members that their and their family members' PII had been compromised during the Data Breach.[10]

26.　According to Brightline, on or about January 30, 2023, one of its vendors, Fortra "was made aware of suspicious activity within certain instances of its GoAnywhere MFT service. Through its investigation, Fortra states that it identified a previously unknown vulnerability which an unauthorized party used to gain access to certain Fortra customers' accounts and download files, including ours."[11]

27.　Brightline further explained that the unknown actor gained access to PII including "names, addresses, dates of birth, member identification numbers, date of health plan coverage, and/or employer names."[12]

28.　As a result of this Data Breach, the PII of 964,300 Brightline patients

---

[9] *See, e.g.*, 45 C.F.R. § 164.520(c)(2)(iii)(B).
[10] *Notice of Fortra Data Security Incident*, *supra* note 3.
[11] *Ibid.*
[12] *Ibid.*

4869-7254-3845, v. 8

1    was compromised. [13]

2        29.    Brightline's notification did not fully express the gravity of the Data

3    Breach. It ends up the Data Breach was perpetrated by the notorious Russian

4    ransomware group, Clop, who exploited a zero-day vulnerability in the GoAnywhere

5    MFT secure file transfer tool.[14]

6        30.    The exploited security flaw enabled Clop to gain remote code execution

7    on, *inter alia*, Brightline's GoAnywhere MFT instances with their administrative

8    console exposed to Internet access.[15] Clop claimed they stole the data over the

9    course of ten days after breaching servers vulnerable to exploits targeting the

10   flaw.[16]

11       31.    Although Clop claimed they could move laterally through exploited

12   networks and deploy ransomware payloads to encrypt systems, Clop maintains they

13   decided against it and only stole documents stored on compromised systems.[17]

14   Indeed, Clop listed Brightline on its extortion portal on March 16, 2023, and posted

15   the compromised data on its data breach site.[18] However, in a highly unusual move,

16   Clop claims they deleted the leaked data in May, stating: "We delete the data and

17   we did not know what this company is doing, because not all companies are

18   analyzing [sic]. And we ask for forgiveness for this incident."[19] It appears that even

19   [13] *Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information*, *supra* note 4.

20   [14] *Clop ransomware claims it breached 130 orgs using GoAnywhere zero-day*,

21   BLEEPINGCOMPUTER, (Feb. 10, 2023), *available at*

22   https://www.bleepingcomputer.com/news/security/clop-ransomware-claims-it-breached-130-orgs-using-goanywhere-zero-day/.

23   [15] *Ibid.*

     [16] *Ibid.*

24   [17] *Ibid.*

25   [18] *Brightline data breach impacts 783K pediatric mental health patients*,

     BLEEPINGCOMPUTER, (May 3, 2023), *available at*

26   https://www.bleepingcomputer.com/news/security/brightline-data-breach-impacts-783k-pediatric-mental-health-patients/.

27   [19] *Ibid.*

28

4869-7254-3845, v. 8

Clop recognizes the sensitive nature of pediatric mental health information.

32.     The Data Breach was far reaching. According to Brightline, the Data Breach impacted the following covered entities which utilized Brightline's services:

•     Seward Association for the Advancement of Marine Science dba Alaska SeaLife Center

•     Competitive Health

•     Diageo

•     Banner Corporation dba Banner Bank

•     Ben Bridge Jeweler, Inc

•     Carrix, Inc

•     Chelan County

•     Coastal Villages Region Fund

•     Legal Name: Continental Mills, Inc. Common Name: The Krusteaz Co

•     CRISTA Ministries

•     Edifecs, Inc.

•     EXL Service.com, LLC

•     First Security Bank of WAx

•     FirstFruits HoldCo, LLC

•     Football Northwest, LLC

•     Goodfellows Bros. LLC

•     Green Diamond Resources

•     Henkel of America, Inc.

•     Hewlett-Packard

•     Holland America Group

•     Insitu, Inc.

•     Keller Supply

•     KPMG LLP

4869-7254-3845, v. 8

- Kodiak Island Borough School District
- MacDonald-Miller Facility Solutions, LLC
- Manke Lumber Company Inc.
- Municipality of Anchorage
- Nintendo of America Inc.
- Northwest Cascade, Inc.
- Oberto Snacks Inc.
- PND Engineers, Inc.
- Pyrotek Inc
- Rail Management Services
- Seagen Inc.
- SolstenXP, Inc.
- Space Needle LLC & Center Art LLC
- Spokane Teachers Credit Union
- Symetra Life Insurance Company
- Tanana Chiefs Conference
- Undead Labs
- University of Alaska
- Virtua Health Inc., Health and Welfare Plan
- Walla Walla University
- Washington Trust Bank
- Whitman College
- Alaska Central Express, Inc DBA Ace Air Cargo
- Alaska Hotel Properties LLC
- Alaska Railroad Corporation
- ASML
- MIIA

4869-7254-3845, v. 8

- •       Harvard University Faculty and Staff (HUFS)
- •       Harvard University (HUGHP)
- •       Boston Childrens Hospital
- •       Blue Cross Blue Shield of Mass
- •       Vertex
- •       South Shore Health
- •       IUOE
- •       The Board of Directors of the Leland Stanford Junior University (Educated Choices)
- •       Stanford University Post-doctoral Scholars
- •       Stanford Health Care – ValleyCare Employee Health Care Plan
- •       Stanford Health Care Employee Health and Welfare Benefit Plan
- •       Stanford Medicine Partners Employee Health and Welfare Benefit Plan.[20]

33. The Data Breach was preventable and a direct result of Brightline's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect patients' PII.

34. Further, Brightline was allegedly informed of the breach on February 4, 2023, yet neglected to inform Plaintiff and the Class until more than two months later, on or about April 7, 2023.

**C. Healthcare providers like Brightline are a prime target for cybercriminals**

35. Over the past several years, data breaches have become alarmingly commonplace. In 2016, the number of data breaches in the U.S. exceeded 1,000, a

---

[20] *List of Covered Entities Impacted by Fortra Data Incident*, Brightline, Inc.*, last accessed* (May 19, 2023), *available at* https://www.hellobrightline.com/list-of-impacted-covered-entities.

-11-
Class Action Complaint

40% increase from 2015.[21] The next year, that number increased by nearly 50%.[22] The following year, the healthcare sector was the second easiest "mark" among all major sectors and categorically had the most widespread exposure per data breach.[23]

36.     Hospital data breaches have continued to rapidly increase. According to the 2019 Healthcare Information and Management Systems Society Cybersecurity Survey, 82 percent of participating hospitals reported having a significant security incident within the last 12 months, with a majority of those being caused by "bad actors."[24]

37.     "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[25]

38.     As the FBI explained, "[p]revention is the most effective defense

---

[21] *Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center and CyberScout*, IDENTITY THEFT RESOURCE CENTER ("ITRC") (Jan. 19, 2017), https://www.idtheftcenter.org/data-breaches-increase-40-percent-in-2016-finds-new-report-from-identity-theft-resource-center-and-cyberscout/.

[22] *2017 Annual Data Breach Year-End Review*, ITRC, (Jan. 25, 2018), https://www.idtheftcenter.org/images/breach/2017Breaches/2017AnnualDataBreachYearEndReview.pdf.

[23] *2018 End-of-Year Data Breach Report*, ITRC, (Feb. 20, 2019), https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf.

[24] *2019 HIMSS Cybersecurity Survey*, HEALTHCARE INFORMATION AND MANAGEMENT SYSTEMS SOCIETY, INC. (Feb. 8, 2019), https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf.

[25] Benishti, Eyal, *How to Safeguard Hospital Data from Email Spoofing Attacks*, INSIDE DIGITAL HEALTH, (Apr. 4, 2019), https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

4869-7254-3845, v. 8

against ransomware and it is critical to take precautions for protection."[26]

39.     Upon information and belief, the Data Breach happened because Brightline neglected to institute rudimentary zero-day attack prevention best practices, including:

a.     Leveraging Windows Defender Exploit Guard, which employs attack surface reduction, network protection and controlled folder access.

b.     Implementing threat intelligence solutions.

c.     Employing next-generation antivirus.

d.     Implementing strong patch management protocols.

e.     Employing input validation.

f.     Employing an AI-powered cybersecurity solution.

g.     Ensuring use of mobile threat prevention.

h.     Implementing a strong data backup system.

i.     Maintaining an adequate incident response plan.[27]

40.     Additionally, Brightline could have instituted the following data security measures to prevent the Data Breach:

a.     Configure firewalls to block access to known malicious IP addresses.

b.     Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares. daugh

c.     Execute operating system environments or specific programs in a

---

[26] *How to Protect Your Networks from Ransomware*, FBI 3 (2016), *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

[27] *Top 10 zero day attack prevention best practices 2022*, CyberTalk (June 14, 2022), *available at* https://www.cybertalk.org/2022/06/14/top-10-zero-day-attack-prevention-best-practices-2022/.

4869-7254-3845, v. 8

virtualized environment.

    d.    Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[28]

41.    The PII stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information stolen in the Data Breach—dates of birth, member identification numbers, dates of health plan coverage, etc.—is difficult, if not impossible, to change.

42.    This data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information… [is] worth more than 10x on the black market."[29] Likewise, the FBI has warned healthcare organizations that PII data is worth 10 times as much as personal credit card data on the black market.[30]

---

[28] Natalie Goriel, *14 Tips to Protect Your business from Ransomware Attacks*, U.S. Small Bus. Admin. (May 18, 2017), *available at* https://www.sba.gov/blog/14-tips-protect-your-business-ransomware-attacks.

[29] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[30] Stolen PHI health credentials can sell for up to 20 times the value of a U.S. credit card number, according to Don Jackson, director of threat intelligence at PhishLabs, a cyber-crime protection company who obtained his data by monitoring underground exchanges where cyber-criminals sell the information. *See* Humer, Caroline & Finkle, Jim, *Your medical record is worth more to hackers than your credit card*, REUTERS, (Sep. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924. Dark web monitoring is a commercially available service which, at a minimum, Brightline can and should perform (or hire a third-party expert to perform).

4869-7254-3845, v. 8

43.     PII data for sale is so valuable because PII is so broad, and it can therefore be used for a wide variety of criminal activity such as creating fake IDs, buying medical equipment and drugs that can be resold on the street, or combining patient numbers with false provider numbers to file fake claims with insurers.

44.     The value of Plaintiff's children's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course. That is, of course, precisely what the Clop ransomware group did here.

45.     As storehouses of that lucrative information, hospitals are also highly targeted by cybercriminals because, "primarily due to budget and resources, hospital security systems are often less sophisticated and decentralized than those in other industries, such as financial services," making them an easier target.[31]

**D. Brightline failed to sufficiently protect the PII that patients had entrusted to it**

    i.   Brightline failed to adhere to HIPAA

46.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[32]

47.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality,

---

[31] Benishti, *supra* note 25.

[32] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth and medical record numbers.

4869-7254-3845, v. 8

integrity, and security of PII is properly maintained.[33]

48.     Brightline's Data Breach resulted from a combination of inadequacies showing it failed to comply with safeguards mandated by HIPAA. Brightline's security failures include, but are not limited to:

a.      Failing to ensure the confidentiality and integrity of electronic PII that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.      Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PII in violation of 45 C.F.R. § 164.306(a)(2);

c.      Failing to protect against any reasonably anticipated uses or disclosures of electronic PII that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.      Failing to ensure compliance with HIPAA security standards by Brightline's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

---

[33] *See* 45 C.F.R. § 164.306 (Security standards and General rules); 45 C.F.R. § 164.308 (Administrative safeguards); 45 C.F.R. § 164.310 (Physical safeguards); 45 C.F.R. § 164.312 (Technical safeguards).

4869-7254-3845, v. 8

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PII as necessary and appropriate for staff members to carry out their functions and to maintain security of PII in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PII, in compliance with 45 C.F.R. § 164.530(c).

ii. Brightline failed to adhere to FTC guidelines

49. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[34] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Brightline, should employ to protect against the unlawful exposure of PII.

50. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[35] The guidelines explain that

---

[34] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Sep. 2, 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[35] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Sep. 28, 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

4869-7254-3845, v. 8

businesses should:

      a.    protect the personal customer information that they keep;

      b.    properly dispose of personal information that is no longer needed;

      c.    encrypt information stored on computer networks;

      d.    understand their network's vulnerabilities; and

      e.    implement policies to correct security problems.

The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

51. The FTC recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[36]

52. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53. Brightline's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

---

[36] *See Start with Security*, *supra* note 34.

4869-7254-3845, v. 8

iii.  Brightline failed to adhere to industry standards

54.  As stated above, the healthcare industry continues to be a high value target among cybercriminals. In 2017, the U.S. healthcare sector experienced over 330 data breaches, a number which continued to grow in 2018 (363 breaches).[37] The costs of healthcare data breaches are among the highest across all industries, topping $380 per stolen record in 2017 as compared to the global average of $141 per record.[38] As a result, both the government and private sector have developed industry best standards to address this growing problem.

55.  The United States Department of Health and Human Services' Office for Civil Rights ("DHHS") notes that, "[w]hile all organizations need to implement policies, procedures, and technical solutions to make it harder for hackers to gain access to their systems and data, this is especially important in the healthcare industry. Hackers are actively targeting healthcare organizations as they store large quantities of highly sensitive and valuable data."[39] DHHS highlights "several basic cybersecurity safeguards that can be implemented to improve cyber resilience which only require a relatively small financial investment, yet they can have a major impact on an organization's cybersecurity posture."[40] Most notably, organizations must properly encrypt PII in order to mitigate against misuse.

56.  The private sector has similarly identified the healthcare sector as particularly vulnerable to cyber-attacks both because of the of value of the PII that it maintains and because, as an industry, it has been slow to adapt and respond to

---

[37] 2018 End of Year Data Brach Report, ITRC, (Feb. 20, 2019), https://www.idtheftcenter.org/ wp-content/uploads/2019/02/ITRC_2018-End-of-Year Aftermath_FINAL_V2_ combinedWEB.pdf.
[38] *Id.*
[39] *Cybersecurity Best Practices for Healthcare Organizations*, HIPAA JOURNAL (Nov. 1, 2018), https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/.
[40] *Id.*

4869-7254-3845, v. 8

cybersecurity threats.[41]

57.     Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry, Brightline failed to adopt sufficient data security processes, a fact highlighted in its notification to affected patients in which it revealed that only after the Data Breach, Brightline set about "implement[ing] additional security measures..."[42]

58.     Brightline failed to adequately train its employees on even the most basic of cybersecurity protocols, that could have prevented the Data Breach.

59.     Brightline's failure to implement these rudimentary measures made it an easy target for the Data Breach that came to pass.

**E. Plaintiff and the Class Members were significantly harmed by the Data Breach**

60.     As discussed above, PII is among the most sensitive, and personally damaging information. A report focusing on breaches in the healthcare industry found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000.00" per person, and that the victims were further routinely forced to pay out-of-pocket costs for health care they did not receive in order to restore coverage.[43]

61.     Victims of medical identity theft can suffer significant financial consequences. "In some cases, they [must pay] the healthcare provider, repa[y] the insurer for services obtained by the thief, or . . . engage[] an identity service

---

[41] *10 Cyber Security Best Practices For the Healthcare Industry*, NTIVA (Jun. 19, 2018), https://www.ntiva.com/blog/10-cybersecurity-best-practices-for-the-healthcare-industry.

[42] *Notice of Fortra Data Security Incident*, *supra* note 3.

[43] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

4869-7254-3845, v. 8

provider or legal counsel to help resolve the incident and prevent future fraud."[44]

62.    Moreover, nearly half of identity theft victims lost their health care coverage as a result of a data breach incident, nearly one-third reported that their premiums went up, and forty percent never resolved their identity theft at all.[45]

63.    "Unfortunately, by the time medical identity theft is discovered, the damage has been done. Forty percent of consumers say that they found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that thieves incurred in their name. As a result, the consequences of medical identity theft are frequently severe, stressful and expensive to resolve."[46]

64.    Moreover, resolution of medical identity theft is time consuming to remedy. "Due to HIPAA privacy regulations, victims of medical identity theft must be involved in the resolution of the crime. In many cases, victims struggle to reach resolution following a medical identity theft incident."[47] Consequently, they remain at "risk for further theft or errors in [their] healthcare records that could jeopardize medical treatments and diagnosis."[48]

65.    As a result of the Data Breach, Plaintiff's children now face, and will continue to face, a heightened risk of identity theft and fraud for the rest of their lives.

66.    As a long-standing member of the healthcare community, Brightline

---

[44] *Fifth Annual Study on Medical Identity Theft*, PONEMON INSTITUTE LLC 1 (Nov. 18, 2015), https://static.nationwide.com/static/2014_Medical_ID_Theft_Study.pdf?r=65.
[45] *Id.*
[46] *The Potential Damages and Consequences of Medical Identity Theft and Healthcare Data Breaches*, EXPERIAN (Apr. 13, 2010), https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf.
[47] *Id.*
[48] *Id.*

4869-7254-3845, v. 8

knew or should have known the importance of safeguarding patient PII entrusted to it and of the foreseeable consequences of a breach. Despite this knowledge, however, Brightline failed to take adequate cyber-security measures to prevent one of the most commonplace kinds of breach–ransomware– from happening.

67.     Brightline has not provided any compensation to patients victimized in the Data Breach and has not offered to provide any assistance or compensation for the costs and burdens—current and future—associated with the identity theft and fraud resulting from the Data Breach.

68.     Even if Brightline did reimburse Plaintiff for the harm he and his children suffered, it is incorrect to assume that reimbursing a victim of the Data Breach for financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[49]

69.     As a result of Brightline's failure to prevent the Data Breach, Plaintiff, his children and Class Members have suffered and will continue to suffer significant damages. They have suffered or are at increased risk of suffering:

        a.     The loss of the opportunity to control how their PII is used;

        b.     The diminution in value of their PII;

        c.     The compromise, publication and/or theft of their PII;

        d.     Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud, including the purchase of identity theft protection insurance and detection

---

[49] *Victims of Identity Theft, 2012*, U.S. DEP'T OF JUSTICE 10, 11 (Jan. 27, 2014), https://www.bjs.gov/content/pub/pdf/vit12.pdf.

4869-7254-3845, v. 8

services;

e.    Lost opportunity costs and lost wages associated with the time and effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen PII;

h.    The continued risk to their PII, which remains in the possession of Brightline and is subject to further breaches so long as Brightline fails to undertake appropriate measures to protect the PII in their possession; and

i.    Current and future costs related to the time, effort, and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class members.

70.    Plaintiff has already incurred harm as a result of the Data Breach.

71.    For example, in an effort to mitigate the heightened risk of identity theft and fraud that he and his children now face, Plaintiff has subscribed to a paid online credit monitoring service through IDshield that provides identity theft protection services. While this credit monitoring service allows Plaintiff to monitor his and his children's credit reports to determine whether suspicious activity has occurred, it is powerless to stop identity theft in advance and does not indemnify them from, or insure them against, the harm caused by the Data Breach.

72.    Plaintiff has also been forced, and will continue to be forced, to expend time and effort in order to mitigate the harm he has suffered on account of the Data

-23-
Class Action Complaint

4869-7254-3845, v. 8

Breach.

73. For example, Plaintiff has expended considerable time and effort attempting to contact Brightline and monitoring his and his children's identity and credit reports periodically, in addition to gathering documentation.

74. To his knowledge, Plaintiff's children have not been the victim of any other data breach.

## CLASS ACTION ALLEGATIONS

75. Plaintiff brings this action on behalf of himself and as a class action on behalf of the following proposed class ("the Class"):

> All individuals whose PII was compromised in Brightline's
> Data Breach.

76. Excluded from the Class are the officers, directors, and legal representatives of Brightline and the judges and court personnel in this case and any members of their immediate families.

77. This action is properly maintainable as a class action under Fed. R. Civ. Proc. 23.

78. The Class is so numerous that joinder of all members would be impracticable. Upon information and belief, the Class consists of nearly one million members, spread across numerous states.

79. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a.    Whether and to what extent Brightline had a duty to protect the PII of Plaintiff, his children and the Class;

    b.    Whether Brightline failed to adopt the practices and procedures necessary to adequately safeguard the information compromised in the Data Disclosure;

-24-
Class Action Complaint

4869-7254-3845, v. 8

c.    Whether Brightline adequately and accurately informed Class
Members that their PII had been compromised;

d.    Whether Class Members are entitled to actual damages,
statutory damages, and/or punitive damages as a result of
Brightline's wrongful conduct; and

e.    Whether Plaintiff, his children and the Class are entitled to
restitution as a result of Brightline's wrongful conduct.

80.    Plaintiff's claims are typical of those of other Class members because
his children's PII, like that of every other Class member, was compromised by the
Data Breach. Further, Plaintiff and his children, like all Class members, was
injured by Brightline's uniform conduct. Plaintiff is advancing the same claims and
legal theories on behalf of his children and all other Class members, and there are
no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other
Class members arise from the same operative facts and are based on the same legal
theories.

81.    Plaintiff will fairly and adequately represent and protect the interests
of the Class in that he has no disabling conflicts of interest that would be
antagonistic to those of the other members of the Class. The damages and
infringement of rights Plaintiff and his children suffered are typical of other Class
members, and Plaintiff seeks no relief that is antagonistic or adverse to the
members of the Class. Plaintiff has retained counsel experienced in complex
consumer class action litigation, and Plaintiff intends to prosecute this action
vigorously.

82.    The issues in this action are appropriate for certification because such
claims present only particular, common issues, the resolution of which would
advance the disposition of this matter and the parties' interests therein. Such

4869-7254-3845, v. 8

particular issues include, but are not limited to, the questions identified in Paragraph 82 above.

83.     A class action would provide substantial benefits over other methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

84.     The litigation of the claims brought herein is manageable. Brightline's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

85.     Adequate notice can be given to Class members directly using information maintained in Brightline's records.

86.     This proposed class action does not present any unique management difficulties.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### NEGLIGENCE and/or NEGLIGENCE *Per Se*

87.     Plaintiff repeats and incorporates by reference the preceding paragraphs.

88.      As a condition of receiving pediatric behavioral health services, Plaintiff, his children and Class members were obligated to provide Brightline their PII.

89.     Plaintiff, his children and the Class members entrusted their PII to

4869-7254-3845, v. 8

Brightline with the understanding that Brightline would safeguard it.

90.     Brightline had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff, his children and Class members could and would suffer if the PII were wrongfully disclosed.

91.     Brightline had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, *inter alia*, designing, maintaining and testing Brightline's security protocols to ensure that Plaintiff's, his children's and Class members' PII in its possession was adequately secured and protected and that employees tasked with maintaining such information were adequately trained on cyber security measures regarding patient PII.

92.     Plaintiff, his children and the Class members were the foreseeable and probable victims of any inadequate security practices and procedures that Brightline employed. Brightline knew of or should have known of the inherent risks in collecting and storing the PII of Plaintiff, his children and the Class, the critical importance of providing adequate security of that PII, that it had inadequately trained its employees, and that its security protocols were insufficient to secure the PII of Plaintiff, his children and Class members.

93.     Brightline's own conduct created a foreseeable risk of harm to Plaintiff, his children and Class members. Brightline's misconduct included, but was not limited to, its failure to take the steps to prevent the Data Breach as set forth herein. Brightline's misconduct also included its decision to not comply with industry standards for the safekeeping and authorized disclosure of patient PII.

94.     Section 5 of the FTC Act prohibits "unfair...practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Brightline, of failing to use reasonable measures to

4869-7254-3845, v. 8

protect PII/PHI. The FTC publications and orders described above also form part of the basis of Brightline's duty in this regard.

95.     Brightline further violated Section 5 of the FTC Act by failing to use reasonable measures to protect patient PII/PHI and not complying with applicable industry standards, as described herein. Brightline's conduct was particularly unreasonable given the nature and amount of PII/PHI it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class members.

96.     Plaintiff, his children and the Class members had no ability to protect their PII once they entrusted it to Brightline.

97.     Brightline has admitted that Plaintiff's, his children's and the Class members' PII was wrongfully disclosed to cybercriminals as a result of the Data Breach.

98.     Brightline breached its duty to Plaintiff, his children and the Class by failing to exercise ordinary and reasonable care in protecting and safeguarding their PII while it was within Brightline's possession or control.

99.     Brightline unlawfully breached its duty to Plaintiff, his children and Class members by failing to have appropriate procedures in place to detect and prevent unauthorized dissemination of its patients' PII.

100.     Brightline also unlawfully breached its duty to adequately disclose to Plaintiff, his children and Class members the existence and scope of the Data Breach.

101.     But for Brightline's wrongful and negligent breach of duties owed to Plaintiff, his children and Class members, Plaintiff's, his children's and Class Members' PII/PHI would not have been compromised.

102.     As a result of Brightline's negligence, Plaintiff, his children and the Class have suffered and will continue to suffer damages and injury including, but

not limited to, out-of-pocket expenses associated with mitigating against the heightened risk of identity theft and fraud caused by the Data Breach; the time and costs associated with remedying identity theft and fraud fairly attributable to the Data Breach; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

103.    These harms are directly and proximately caused by the Data Breach.

## SECOND CLAIM FOR RELIEF
## INVASION OF PRIVACY

104.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

105.    Plaintiff, his children and Class members took reasonable and appropriate steps to keep their PII confidential from the public.

106.    Plaintiff's, his children's and Class members' efforts to safeguard their own PII were successful, as their PII was not known to the general public prior to the Data Breach.

107.    Plaintiff, his children and Class members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

108.    Brightline owed a duty to its patients, including Plaintiff's children and Class members, to keep their PII confidential.

109.    The unauthorized release of PII, especially PHI, is highly offensive to a reasonable person.

110.    Plaintiff's, his children's and Class members' PII is not of legitimate concern to the public.

111.    Brightline knew or should have known that Plaintiff's, his children's and Class members' PII was private, as Brightline is a "covered entity" subject to HIPAA.

112.    Brightline publicized Plaintiff's, his children's and Class members' PII, by communicating it to cyber criminals who had no legitimate interest in this PII and who had the express purpose of monetizing that information by injecting it into the illicit stream of commerce flowing through the dark web.

113.    Indeed, not only is Plaintiff's, his children's and Class members' PII traveling the dark web, but it is being used to commit fraud; it is being disseminated amongst, *inter alia*, merchants, creditors, health care providers and governmental agencies.

114.    It is therefore substantially certain that the Plaintiff's, his children's and the Class members' PII is rapidly becoming public knowledge – among the community writ large – due to the nature of the ransomware campaign that procured it, and the identity theft that it is designed for.

115.    Unless and until enjoined, and restrained by order of this Court, Brightline's wrongful conduct will continue to cause great and irreparable injury to Plaintiff, his children and Class Members in that Brightline's inadequate data security measures will likely result in additional data breaches. Plaintiff, his children and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of the Plaintiff's, his children's and Class members' privacy by Brightline.

## THIRD CLAIM FOR RELIEF

### BREACH OF CONFIDENCE

116.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

117.    Plaintiff and Class members conveyed confidential and novel information to Brightline, their PII.

118.    Brightline had knowledge that the PII was disclosed to it in confidence.

119.    There was an understanding between Brightline and Plaintiff and

4869-7254-3845, v. 8

Class members that the confidence of their PII be maintained.

120. Brightline breached the confidences Plaintiff and Class members formed with it by disclosing their PII to cybercriminals.

121. Unless and until enjoined, and restrained by order of this Court, Brightline's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Brightline's inadequate data security measures will likely result in additional data breaches. Plaintiff and Class members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further breaches of confidence by Brightline.

## FOURTH CLAIM FOR RELIEF

## BREACH OF CONTRACT INCLUDING THE COVENANT
## OF GOOD FAITH AND FAIR DEALING

122. Plaintiff repeats and incorporates by reference the preceding paragraphs.

123. Brightline offered to provide pediatric behavioral health services to Plaintiff and Class members in exchange for payment.

124. Plaintiff, his children and the Class accepted Brightline's offer to provide pediatric behavioral health services by paying for them and receiving said treatment.

125. Brightline required Plaintiff, his children and Class members to provide their PII, including names, addresses, Social Security numbers, health insurance information and limited medical information in order to receive services from Brightline.

126. Plaintiff and Class members exchanged valuable consideration – money – with Brightline for goods and services, a crucial part of which was Brightline's promise to protect their PII from unauthorized disclosure.

127. In its Privacy Policy, Brightline expressly promised Plaintiff and the

4869-7254-3845, v. 8

Class that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

128. Necessarily implicit in the agreement between Brightline and its patients, including Plaintiff's children and Class members, was Brightline's obligation to use such PII for business and treatment purposes only, to take reasonable steps to secure and safeguard that PII, and not make disclosures of the PII to unauthorized third parties.

129. Further implicit in the agreement, Brightline was obligated to provide Plaintiff, his children and the Class with prompt and adequate notice of any and all unauthorized access and/or theft of their PII.

130. Plaintiff, his children and the Class would not have entrusted their PII to Brightline in the absence of such agreement with Brightline.

131. Brightline materially breached the implied contract(s) they had entered with Plaintiff, his children and Class members by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Brightline further breached the implied contracts with Plaintiff, his children and Class members by:

a. Failing to properly safeguard and protect Plaintiff's children's and Class members' PII;

b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement;

c. Failing to ensure the confidentiality and integrity of electronic PII that Brightline created, received, maintained and transmitted in violation of 45 C.F.R. § 164.306(a)(1).

132. The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of Brightline's material breaches of its

Class Action Complaint

4869-7254-3845, v. 8

agreements.

133.    Plaintiff, his children and Class members have performed as required under the relevant agreements, or such performance was waived by the conduct of Brightline.

134.    Under the laws of California, good faith is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

135.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

136.    Brightline failed to promptly advise Plaintiff, his children and the Class of the Data Breach.

137.    In these and other ways, Brightline violated its duty of good faith and fair dealing.

138.    Plaintiff, his children and members of the Class have sustained damages as a result of Brightline's breaches of the Contract, including breaches of the Contract through violations of the covenant of good faith and fair dealing.

## FIFTH CLAIM FOR RELIEF
### TRESPASS TO CHATTELS

139.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

4869-7254-3845, v. 8

140.    Plaintiff, his children and the Class entrusted their PII to Brightline with the understanding that it would keep that information confidential.

141.    Brightline intentionally dispossessed the Plaintiff, his children and the putative members of the Class of their PII and/or used or intermeddled with the Plaintiff, his children's and the putative members of the Class's possession of their PII, when it allowed cybercriminals to access it, going far beyond the bounds of any consent Plaintiff and the Class bestowed upon Brightline.

142.    As explained at length above, Plaintiff, his children and the Class members were damaged thereby.

**SIXTH CLAIM FOR RELIEF**

**BAILMENT**

143.    Plaintiff repeats and incorporates by reference the preceding paragraphs.

144.    Plaintiff, his children the Class, and Brightline contemplated a mutual benefit bailment when the Plaintiff, his children and putative members of the Class transmitted their PII to Brightline solely for treatment and the payment thereof.

145.    Plaintiff's, his children's and the Class's PII was transmitted to Brightline in trust for a specific purpose (treatment), with an implied contract that the trust was to be faithfully executed, and the PII was to be accounted for when the special purpose was accomplished.

146.    Brightline was duty bound under the law to exercise ordinary care and diligence in safeguarding Plaintiff's, his children's and the Class's PII.

147.    Plaintiff's, his children's and the Class's PII was used for a different purpose than the Plaintiff, his children and the Class intended, for a longer time period and/or in a different manner or place than the parties intended.

148.    As explained at length above, Plaintiff and the Class were damaged thereby.

4869-7254-3845, v. 8

## SEVENTH CLAIM FOR RELIEF

## California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL")

149. Plaintiff repeats and incorporates by reference the preceding paragraphs.

150. Brightline is headquartered in California. Brightline violated the UCL by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL.

151. The UCL prohibits, *inter alia*, deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of California.

152. Moreover, the UCL prohibits, *inter alia*, the act, use or employment of any deception, fraud, false pretense, concealment, suppression or omission of any material fact with intent that others rely thereon in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of California.

153. As a large healthcare provider, Brightline conducted business, trade or commerce in the State of California.

154. In the conduct of its business, trade and commerce, and in furnishing services in the State of California, Brightline's actions were directed at consumers.

155. In the conduct of its business, trade, and commerce, and in furnishing services in the State of California, Brightline collected and stored highly personal and private information, including PII belonging to Plaintiff, his children and the members of the Class.

156. In the conduct of its business, trade, and commerce, and in furnishing services in State of California, Brightline engaged in deceptive, unfair, and unlawful trade acts or practices, in violation of the UCL, including but not limited

4869-7254-3845, v. 8

to the following:

      a.    Brightline misrepresented and fraudulently advertised material facts, pertaining to the sale and/or furnishing of healthcare services to the Class by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PII from unauthorized disclosure, release, data breaches and cyber-attack, and moreover, that its business associates would do the same;

      b.    Brightline misrepresented material facts, pertaining to the sale and/or furnishing of medical services, to the Class by representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to privacy and security of Class Members' PII, and that its business associates would do the same;

      c.    Brightline omitted, suppressed, and concealed the material fact of the inadequacy of its privacy and security protections for Class Members' PII;

      d.    Brightline engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Class Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45) and HIPAA (42 U.S.C. §§ 1302d *et. seq.*);

      e.    Brightline engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to Class

Members in a prompt and accurate manner, contrary to the duties imposed by law;

f.      Brightline engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Class Members' PII from further unauthorized disclosure, release, data breaches, and theft;

157.   Brightline systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff, his children and members of the Class;

158.   Brightline willfully engaged in such acts and practices, and knew that it violated the UCL, or showed reckless disregard for whether it violated the UCL.

159.   As a direct and proximate result of Brightline's deceptive trade practices, Class Members suffered injury and/or damages, including the loss of their legally protected interest in the confidentiality and privacy of their PII, and the loss of the benefit of their respective bargains.

160.   The above unfair and deceptive practices and acts by Brightline were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

161.   Brightline knew or should have known that its computer systems and data security practices were inadequate to safeguard Class Members' PII and that risk of a data breach or cyber-attack was highly likely. Brightline's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

162.   Plaintiff, his children and Class Members seek relief under the UCL

4869-7254-3845, v. 8

including, but not limited to, actual damages, injunctive relief, and/or attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

163. Plaintiff repeats and incorporates by reference the preceding paragraphs.

164. In the alternative to the claims alleged above, Plaintiff alleges that he has no adequate remedy at law and brings this unjust enrichment claim on behalf of his children and the Class Members.

165. Plaintiff, his children and Class Members conferred a monetary benefit on Brightline in the form of payment for healthcare services. Plaintiff, his children and Class Members also provided their PII to Brightline.

166. The money that Plaintiff, his children and Class Members paid, directly or indirectly, to Brightline should have been used by it, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

167. As a result of Brightline's conduct described herein, Plaintiff, his children and Class Members suffered actual damages in an amount equal to the difference in value between healthcare services associated with the reasonable data privacy and security practices and procedures that Plaintiff, his children and Class Members paid for, and the inadequate healthcare services without reasonable data privacy and security practices and procedures that they received.

168. Under principles of equity and good conscience, Brightline should not be permitted to retain money belonging to Plaintiff, his children and Class Members because Brightline failed to use that money to implement the reasonable data privacy and security practices and procedures that Plaintiff, his children and Class Members paid for and that were otherwise mandated by HIPAA regulations, federal

and state law, and industry standards and best practices.

169. Brightline should be compelled to disgorge into a common fund for the benefit of Plaintiff, his children and Class Members all unlawful or inequitable proceeds received by Brightline.

170. A constructive trust should be imposed upon all unlawful or inequitable sums received by Brightline traceable to Plaintiff, his children and Class Members.

**NINTH CLAIM FOR RELIEF**

**CONVERSION**

171. Plaintiff repeats and incorporates by reference the preceding paragraphs.

172. At all times relevant hereto, Plaintiff, his children and Class Members had ownership rights to their PII.

173. Brightline engaged in the wrongful act of disposing of the PII by giving cyber criminals access to it.

174. As explained at length above, Plaintiff, his children and the Class were damaged thereby.

**TENTH CLAIM FOR RELIEF**

**California Consumer Records Act, Cal. Civ. Code §1798.82, *et seq.* ("CCRA")**

175. Plaintiff repeats and incorporates by reference the preceding paragraphs.

176. Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an

Class Action Complaint

4869-7254-3845, v. 8

unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

177. The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

178. The CCRA specifies certain requirements when entities subject to its purview are required to issue a security breach notification, including that such entities do not unreasonably delay such notifications.

179. Brightline unreasonably delayed before sending notice of the breach to the Class.

180. As a result of Brightline's violation of the CCRA, Plaintiff and the Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff, his children and Class members because their stolen information would have had less value to identity thieves.

181. As a result of Brightline's violation of the CCRA, Plaintiff, his children and the Class suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

## ELEVENTH CLAIM FOR RELIEF

### California Confidentiality of Medical Information Act, Cal. Civ. Code §56, *et seq.* ("CMIA")

182. Plaintiff repeats and incorporates by reference the preceding paragraphs.

183.    Brightline is a "contractor," as defined in Cal. Civ. Code § 56.05(d), a "pharmaceutical company," as defined in *id.* § 56.05(1), and "a provider of health care," as defined in Cal. Civ. Code § 56.06, and is therefore subject to the requirements of the CMIA, Cal. Civ. Code §§ 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

184.    Brightline is a person licensed under California under California's Business and Professions Code, Division 2. See Cal. Bus. Prof. Code § 4000, et seq. Brightline therefore qualifies as a "provider of health care," under the CMIA.

185.    Plaintiff, his children and the Class are "patients," as defined in CMIA, Cal. Civ. Code § 56.05(k).

186.    Brightline disclosed "medical information," as defined in CMIA, Cal. Civ. Code § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the affirmative actions of Brightline's employees, which allowed the hackers to see and obtain Plaintiff's and the Class members' medical information.

187.    Brightline's negligence resulted in the release of PII pertaining to Plaintiff, his children and the Class to unauthorized persons and the breach of the confidentiality of that information. Brightline's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's, his children's and Class members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

188.    Brightline's computer systems did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A).

189.    Plaintiff, his children and the Class were injured and have suffered

-41-
Class Action Complaint

damages, as described above, from Brightline's illegal disclosure and negligent release of their medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, including actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorney fees, expenses and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, as father and next friend of E.N.C., C.J.C. and E.J.C., minors, individually, on behalf of themselves and all others similarly situated, requests the following relief:

A.      An Order certifying this action as a class action and appointing Plaintiff as Class representative and his counsel as Class counsel;

B.      A mandatory injunction directing Brightline to safeguard the PII of Plaintiff, his children and the Class hereinafter adequately by implementing improved security procedures and measures;

C.      A mandatory injunction requiring that Brightline provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons;

D.      An award of compensatory, restitutionary, punitive, exemplary, and statutory damages, as permitted by law.

E.      An award of attorneys' fees and costs;

F.      An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law; and

G.      Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

4869-7254-3845, v. 8

Respectfully submitted,

Dated: June 13, 2023

Weinberg, Roger & Rosenfeld
A Professional Corporation

/s/ Caren P. Sencer

By:   CAREN P. SENCER

*Attorneys for Plaintiff Kyle Castro, as father
and next friend of E.N.C., C.J.C. and E.J.C.*

Herzfeld, Suetholz, Gastel, Leniski
& Wall, PLLC

*/s/ Michael J. Wall*

Michael J. Wall
(*To be admitted Pro Hac Vice*)

Peter J. Jannace
(*To be admitted Pro Hac Vice*)

2\1372161

-43-
Class Action Complaint

4869-7254-3845, v. 8

# EXHIBIT A

Brightline, Inc
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

PHTNC300500730
Parent/Guardian of E    C

SMYRNA, TN 37167-1657
||I|•||IIII||I•••I||I•I||IIII|I•I||I•I•I|I•I|I•I||•III|I|

April 19, 2023



PHTNC300500730007300010390400

**IMPORTANT INFORMATION - PLEASE REVIEW CAREFULLY**

Dear Parent or Guardian of E'    C

Brightline is a provider of virtual healthcare services available through your coverage with Aetna. We are writing to inform you about a data security incident involving Brightline's vendor, Fortra (formerly known as HelpSystems), which provides file transfer services. The remaining sections of this letter explain the incident and offer additional assistance for protecting your minor's information, including complimentary identity theft protection and credit monitoring services.

**What Happened:** On January 30, 2023, Fortra was made aware of suspicious activity within its GoAnywhere file transfer software. Through its investigation, Fortra identified unauthorized access to certain GoAnywhere customers' accounts and download files. Fortra also promptly notified law enforcement and we understand it is cooperating with their investigation of the GoAnywhere incident.

Brightline learned of the incident on February 4, 2023 and we immediately engaged our incident response plan and confirmed that the unauthorized access was terminated. We also implemented additional security measures and continue to identify ways to reduce data exposure. Brightline's investigation determined the incident was limited solely to the GoAnywhere MFT Software-as-a-Service ("SaaS").

**What Information Was Involved:** The investigation determined that some files containing eligibility information were acquired by the unauthorized person during the incident. The files contained your minor's name, member ID, group ID, gender, and date of birth.

**What We Are Doing:** While our investigation has determined that the incident is limited to the GoAnywhere MFT SaaS, we continue to enhance our cybersecurity program to further safeguard our systems from cyber threats. As a precaution, we have secured the services of Cyberscout to provide identity theft restoration and credit monitoring services at no cost to your minor for **2 years.**

In response to the incident, we are providing the parents of impacted minor dependents with access to **Cyber Monitoring** services for you and your minor child for 2 years at no charge. Cyber monitoring will look out for yours and your child's personal data on the dark web and alert you if your personally identifiable information or your child's is found online. These services will be provided by Cyberscout through Identity Force, a TransUnion company specializing in fraud assistance and remediation services.

31017124 I

Scanned with CamScanner

**How do I enroll for the free services?** To enroll in Cyber Monitoring services at no charge, please log on to https://secure.identityforce.com/benefit/brightline and follow the instructions provided. When prompted please provide the following unique code to receive services: **9KKUDN7Z8H** Once you have enrolled yourself, click on your name in the top right of your dashboard and select "Manage Family Protection" then "Add Family Member" to enroll your child. In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and an email account and will require enrollment by parent or guardian first. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

**What You Can Do:** We encourage you to enroll in the identity theft, restoration and credit monitoring services from Cyberscout. For additional resources available to you, please review the information contained in the pages following this letter.

## ADDITIONAL RESOURCES

**Order Your Minor's Free Credit Report.** To order your minor's free annual credit report (if one exists), visit www.annualcreditreport.com, call toll-free at (877) 322-8228, or complete the Annual Credit Report Request Form on the U.S. Federal Trade Commission's (FTC) website at www.ftc.gov and mail it to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA 30348-5281.

The three credit bureaus (Equifax, Experian, and TransUnion) provide free annual credit reports only through the website, toll-free number, or request form. You may also purchase a copy of your minor's credit report by contacting any of the credit reporting agencies below:

| | |
|---|---|
| Equifax www.equifax.com | (800) 685-1111 |
| Experian www.experian.com | (888) 397-3742 |
| TransUnion www.transunion.com | (800) 916-8800 |

**For Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, Puerto Rico, and Vermont residents:** You may obtain one or more (depending on the state) additional copies of your minor's credit report, free of charge. You must contact each of the credit reporting agencies directly to obtain such additional report(s).

Upon receiving your minor's credit report, review it carefully. Errors may be a warning sign of possible identity theft. Here are a few tips of what to look for:

- Look for accounts you did not open.
- Look in the "inquiries" section for names of creditors from whom you have not requested credit. Some companies bill under names other than their store or commercial names; the credit bureau will be able to tell if this is the case.
- Look in the "personal information" section for any inaccuracies in information (such as home address and Social Security Number).

If you see anything you do not understand, call the credit bureau at the telephone number on the report. You should notify the credit bureaus of any inaccuracies in your minor's report, whether due to error or fraud, as soon as possible so the information can be investigated and, if found to be in error, corrected. If there are accounts or charges you did not authorize, immediately notify the appropriate credit bureau by telephone and in writing. Information that cannot be explained should also be reported to your local police or sheriff's office because it may signal criminal activity.

We encourage you to take advantage of these protections and remain vigilant for incidents of fraud and identity theft, including regularly reviewing and monitoring your minor's credit reports and account statements.

Scanned with CamScanner

**Federal Trade Commission and State Attorneys General Offices.** If you believe your minor is the victim of identity theft or have reason to believe your minor's personal information has been misused, you should immediately contact the Federal Trade Commission and/or the Attorney General's office in your home state, and local law enforcement. You may also contact these agencies for information on how to prevent or minimize the risks of identity theft.

You may contact the **Federal Trade Commission**, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338).

**For Maryland residents:** You may contact the Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, www.oag.state.md.us, 1-888-743-0023.



**For North Carolina residents:** You may contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov, 1-877-566-7226 for more information about preventing identity theft.

**For New York residents:** The Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; https://ag.ny.gov/.

**For Connecticut residents:** You may contact the Connecticut Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, 1-860-808-5318, www.ct.gov/ag.

**Placing a Security Freeze.** You have a right to place a "security freeze" on your minor's credit report (if one exists), at no charge, which will prohibit a consumer reporting agency from releasing information in your minor's credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your minor's name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your minor's credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

You can place, temporarily lift, or permanently remove a security freeze on your minor's credit report online, by phone, or by mail. You will need to provide certain personal information, such as address, date of birth, and Social Security number to request a security freeze and may be provided with a unique personal identification number (PIN) or password, or both, that can be used by you to authorize the removal or lifting of the security freeze. Information on how to place a security freeze with the credit reporting agencies is also contained in the links below.

https://www.equifax.com/personal/credit-report-services/
https://www.experian.com/freeze/center.html
https://www.transunion.com/credit-freeze

As of February 20, 2023, the reporting agencies allow you to place a credit freeze through the online, physical mail and phone numbers and request that you provide the information listed below. Where possible, please consult the websites listed above for the most up-to-date instructions.

Scanned with CamScanner

| Reporting Agency | Online | Physical Mail | Phone Number |
|---|---|---|---|
| Equifax | Freeze request may be submitted via your minor's myEquifax account, which you can create here: https://my.equifax.com/c onsumer-registration/UCS C/#/personal-info | Mail the Equifax Freeze Request Form to: Equifax Information Services LLC P.O. Box 105788 Atlanta, GA 30348-5788 Form may be found here: https://assets.equifax.com/assets/per sonal/Security_Freeze_Request_Form .pdf | 888-298-0045 |
| Experian | Freeze request may be submitted here: https://www.experian.co m/ncaconline/freeze | Mail the request to: Experian Security Freeze, P.O. Box 9554, Allen, TX 75013 Request must include: • Full Name • Social security number • Complete address for last 2 years • Date of birth • One copy of a government issued identification card, such as a driver's license, state ID card, etc. • One copy of a utility bill, bank or insurance statement, etc. | 888-397-3742 |
| TransUnion | Freeze request may be submitted via your minor's TransUnion account, which you can create here: https://service.transunion. com/dss/orderStep1_form .page? | Mail the request to: TransUnion P.O. Box 160 Woodlyn, PA 19094 Request must include: • Full Name • Social security number • Complete address | 888-909-8872 |

Fees associated with placing, temporarily lifting, or permanently removing a security freeze no longer apply at nationwide consumer reporting agencies.

Scanned with CamScanner

**Placing a Fraud Alert.** To protect your minor from possible identity theft, you have the right to place an initial or extended fraud alert on your minor's credit file at no cost. An initial fraud alert is a one-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If your minor is a victim of identity theft, your minor is entitled to an extended fraud alert, which is a fraud alert lasting seven years. You may obtain additional information from the FTC and the credit reporting agencies listed above about placing a fraud alert and/or security freeze on your minor's credit report.

**Protecting Against Medical Identity Theft.** The following practices can help to protect your minor from medical identity theft: (1) Only share your minor's health insurance cards with your minor's health care providers and other family members who are covered under your minor's insurance plan or who help your minor with your medical care, (2) Review your minor's "explanation of benefits statement" which you receive from your minor's health insurance company. Follow up with your minor's insurance company or care provider for any items you do not recognize. If necessary, contact the care provider on the explanation of benefits statement and ask for copies of medical records from the date of the potential access (noted above) to current date; and (3) Ask your minor's insurance company for a current year-to-date report of all services paid for your minor as a beneficiary. Follow up with your minor's insurance company or the care provider for any items you do not recognize.

**For More Information:** Should you have any additional questions, you may contact us at 1-833-570-2987 from 8:00 am to 8:00 pm Eastern time, Monday through Friday, excluding holidays. Brightline is committed to data protection. We regularly review our physical and electronic safeguards to protect personal information, and we will continue to take appropriate steps to safeguard personal information and our systems. We deeply regret any inconvenience or concern this may have caused.

Sincerely,
Brightline

Scanned with CamScanner

Brightline, Inc
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

PHTNC300500734
Parent/Guardian of C          C.

SMYRNA, TN 37167-1657
[barcode text]



April 19, 2023

**IMPORTANT INFORMATION - PLEASE REVIEW CAREFULLY**

Dear Parent or Guardian of C          C.

Brightline is a provider of virtual healthcare services available through your coverage with Aetna. We are writing to inform you about a data security incident involving Brightline's vendor, Fortra (formerly known as HelpSystems), which provides file transfer services. The remaining sections of this letter explain the incident and offer additional assistance for protecting your minor's information, including complimentary identity theft protection and credit monitoring services.

**What Happened:** On January 30, 2023, Fortra was made aware of suspicious activity within its GoAnywhere file transfer software. Through its investigation, Fortra identified unauthorized access to certain GoAnywhere customers' accounts and download files. Fortra also promptly notified law enforcement and we understand it is cooperating with their investigation of the GoAnywhere incident.

Brightline learned of the incident on February 4, 2023 and we immediately engaged our incident response plan and confirmed that the unauthorized access was terminated. We also implemented additional security measures and continue to identify ways to reduce data exposure. Brightline's investigation determined the incident was limited solely to the GoAnywhere MFT Software-as-a-Service ("SaaS").

**What Information Was Involved:** The investigation determined that some files containing eligibility information were acquired by the unauthorized person during the incident. The files contained your minor's name, member ID, group ID, gender, and date of birth.

**What We Are Doing:** While our investigation has determined that the incident is limited to the GoAnywhere MFT SaaS, we continue to enhance our cybersecurity program to further safeguard our systems from cyber threats. As a precaution, we have secured the services of Cyberscout to provide identity theft restoration and credit monitoring services at no cost to your minor for 2 years.

In response to the incident, we are providing the parents of impacted minor dependents with access to **Cyber Monitoring** services for you and your minor child for 2 years at no charge. Cyber monitoring will look out for yours and your child's personal data on the dark web and alert you if your personally identifiable information or your child's is found online. These services will be provided by Cyberscout through Identity Force, a TransUnion company specializing in fraud assistance and remediation services.

31217124.1

Scanned with CamScanner

**How do I enroll for the free services?** To enroll in Cyber Monitoring services at no charge, please log on to https://secure.identityforce.com/benefit/brightline and follow the instructions provided. When prompted please provide the following unique code to receive services: **2FKSWVK2TP** Once you have enrolled yourself, click on your name in the top right of your dashboard and select "Manage Family Protection" then "Add Family Member" to enroll your child. In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and an email account and will require enrollment by parent or guardian first. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

**What You Can Do:** We encourage you to enroll in the identity theft, restoration and credit monitoring services from Cyberscout. For additional resources available to you, please review the information contained in the pages following this letter.

### ADDITIONAL RESOURCES

**Order Your Minor's Free Credit Report.** To order your minor's free annual credit report (if one exists), visit www.annualcreditreport.com, call toll-free at (877) 322-8228, or complete the Annual Credit Report Request Form on the U.S. Federal Trade Commission's (FTC) website at www.ftc.gov and mail it to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA 30348-5281.

The three credit bureaus (Equifax, Experian, and TransUnion) provide free annual credit reports only through the website, toll-free number, or request form. You may also purchase a copy of your minor's credit report by contacting any of the credit reporting agencies below:

Equifax www.equifax.com     (800) 685-1111
Experian www.experian.com     (888) 397-3742
TransUnion www.transunion.com     (800) 916-8800

**For Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, Puerto Rico, and Vermont residents:** You may obtain one or more (depending on the state) additional copies of your minor's credit report, free of charge. You must contact each of the credit reporting agencies directly to obtain such additional report(s).

Upon receiving your minor's credit report, review it carefully. Errors may be a warning sign of possible identity theft. Here are a few tips of what to look for:

* Look for accounts you did not open.
* Look in the "inquiries" section for names of creditors from whom you have not requested credit. Some companies bill under names other than their store or commercial names; the credit bureau will be able to tell if this is the case.
* Look in the "personal information" section for any inaccuracies in information (such as home address and Social Security Number).

If you see anything you do not understand, call the credit bureau at the telephone number on the report. You should notify the credit bureaus of any inaccuracies in your minor's report, whether due to error or fraud, as soon as possible so the information can be investigated and, if found to be in error, corrected. If there are accounts or charges you did not authorize, immediately notify the appropriate credit bureau by telephone and in writing. Information that cannot be explained should also be reported to your local police or sheriff's office because it may signal criminal activity.

We encourage you to take advantage of these protections and remain vigilant for incidents of fraud and identity theft, including regularly reviewing and monitoring your minor's credit reports and account statements.

Scanned with CamScanner

Federal Trade Commission and State Attorneys General Offices. If you believe your minor is the victim of identity theft or have reason to believe your minor's personal information has been misused, you should immediately contact the Federal Trade Commission and/or the Attorney General's office in your home state, and local law enforcement. You may also contact these agencies for information on how to prevent or minimize the risks of identity theft.

You may contact the Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338).

For Maryland residents: You may contact the Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, www.oag.state.md.us, 1-888-743-0023.

For North Carolina residents: You may contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov, 1-877-566-7226 for more information about preventing identity theft.

For New York residents: The Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; https://ag.ny.gov/.

For Connecticut residents: You may contact the Connecticut Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, 1-860-808-5318. www.ct.gov/ag.

Placing a Security Freeze. You have a right to place a "security freeze" on your minor's credit report (if one exists), at no charge, which will prohibit a consumer reporting agency from releasing information in your minor's credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your minor's name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your minor's credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

You can place, temporarily lift, or permanently remove a security freeze on your minor's credit report online, by phone, or by mail. You will need to provide certain personal information, such as address, date of birth, and Social Security number to request a security freeze and may be provided with a unique personal identification number (PIN) or password, or both, that can be used by you to authorize the removal or lifting of the security freeze. Information on how to place a security freeze with the credit reporting agencies is also contained in the links below:

https://www.equifax.com/personal/credit-report-services/
https://www.experian.com/freeze/center.html
https://www.transunion.com/credit-freeze

As of February 20, 2023, the reporting agencies allow you to place a credit freeze through the online, physical mail and phone numbers and request that you provide the information listed below. Where possible, please consult the websites listed above for the most up-to-date instructions.

Scanned with CamScanner

| Reporting Agency | Online | Physical Mail | Phone Number |
|---|---|---|---|
| Equifax | *Freeze request may be submitted via your minor's myEquifax account, which you can create here:*<br><br>https://my.equifax.com/consumer-registration/UCS C/#/personal-Info | *Mail the Equifax Freeze Request Form to:*<br><br>Equifax Information Services LLC P.O. Box 105788 Atlanta, GA 30348-5788<br><br>*Form may be found here:*<br>https://assets.equifax.com/assets/personal/Security_Freeze_Request_Form .pdf | 888-298-0045 |
| Experian | *Freeze request may be submitted here:*<br><br>https://www.experian.com/ncaconline/freeze | *Mail the request to:*<br><br>Experian Security Freeze, P.O. Box 9554, Allen, TX 75013<br><br>*Request must include:*<br><ul><li>Full Name</li><li>Social security number</li><li>Complete address for last 2 years</li><li>Date of birth</li><li>One copy of a government issued identification card, such as a driver's license, state ID card, etc.</li><li>One copy of a utility bill, bank or insurance statement, etc.</li></ul> | 888-397-3742 |
| TransUnion | *Freeze request may be submitted via your minor's TransUnion account, which you can create here:*<br><br>https://service.transunion. com/dss/orderStep1_form .page?<br><br> | *Mail the request to:*<br><br>TransUnion P.O. Box 160 Woodlyn, PA 19094<br><br>*Request must include:*<br><ul><li>Full Name</li><li>Social security number</li><li>Complete address</li></ul> | 888-909-8872 |

Fees associated with placing, temporarily lifting, or permanently removing a security freeze no longer apply at nationwide consumer reporting agencies.

31917124.1

Scanned with CamScanner

**Placing a Fraud Alert.** To protect your minor from possible identity theft, you have the right to place an initial or extended fraud alert on your minor's credit file at no cost. An initial fraud alert is a one-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If your minor is a victim of identity theft, your minor is entitled to an extended fraud alert, which is a fraud alert lasting seven years. You may obtain additional information from the FTC and the credit reporting agencies listed above about placing a fraud alert and/or security freeze on your minor's credit report.

**Protecting Against Medical Identity Theft.** The following practices can help to protect your minor from medical identity theft: (1) Only share your minor's health insurance cards with your minor's health care providers and other family members who are covered under your minor's insurance plan or who help your minor with your medical care; (2) Review your minor's "explanation of benefits statement" which you receive from your minor's health insurance company. Follow up with your minor's insurance company or care provider for any items you do not recognize. If necessary, contact the care provider on the explanation of benefits statement and ask for copies of medical records from the date of the potential access (noted above) to current date; and (3) Ask your minor's insurance company for a current year-to-date report of all services paid for your minor as a beneficiary. Follow up with your minor's insurance company or the care provider for any items you do not recognize.

**For More Information.** Should you have any additional questions, you may contact us at 1-833-570-2987 from 8:00 am to 9:00 pm Eastern time, Monday through Friday, excluding holidays. Brightline is committed to data protection. We regularly review our physical and electronic safeguards to protect personal information, and we will continue to take appropriate steps to safeguard personal information and our systems. We deeply regret any inconvenience or concern this may have caused.

Sincerely,
Brightline

Brightline, Inc
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

PHTNC300500729
Parent/Guardian of E        C.

SMYRNA, TN 37167-1657
ılıltlılltlılılılılllılılllllllllıllllıluluqılılı



April 19, 2023

### IMPORTANT INFORMATION - PLEASE REVIEW CAREFULLY

Dear Parent or Guardian of E     C    ,

Brightline is a provider of virtual healthcare services available through your coverage with Aetna. We are writing to inform you about a data security incident involving Brightline's vendor, Fortra (formerly known as HelpSystems), which provides file transfer services. The remaining sections of this letter explain the incident and offer additional assistance for protecting your minor's information, including complimentary identity theft protection and credit monitoring services.

**What Happened:** On January 30, 2023, Fortra was made aware of suspicious activity within its GoAnywhere file transfer software. Through its investigation, Fortra identified unauthorized access to certain GoAnywhere customers' accounts and download files. Fortra also promptly notified law enforcement and we understand it is cooperating with their investigation of the GoAnywhere incident.

Brightline learned of the incident on February 4, 2023 and we immediately engaged our incident response plan and confirmed that the unauthorized access was terminated. We also implemented additional security measures and continue to identify ways to reduce data exposure. Brightline's investigation determined the incident was limited solely to the GoAnywhere MFT Software-as-a-Service ("SaaS").

**What Information Was Involved:** The investigation determined that some files containing eligibility information were acquired by the unauthorized person during the incident. The files contained your minor's name, member ID, group ID, gender, and date of birth.

**What We Are Doing:** While our investigation has determined that the incident is limited to the GoAnywhere MFT SaaS, we continue to enhance our cybersecurity program to further safeguard our systems from cyber threats. As a precaution, we have secured the services of Cyberscout to provide identity theft restoration and credit monitoring services at no cost to your minor for 2 years.

In response to the incident, we are providing the parents of impacted minor dependents with access to **Cyber Monitoring** services for you and your minor child for 2 years at no charge. Cyber monitoring will look out for yours and your child's personal data on the dark web and alert you if your personally identifiable information or your child's is found online. These services will be provided by Cyberscout through Identity Force, a TransUnion company specializing in fraud assistance and remediation services.

310171244.1

**How do I enroll for the free services?** To enroll in Cyber Monitoring services at no charge, please log on to https://secure.identityforce.com/benefit/brightline and follow the instructions provided. When prompted please provide the following unique code to receive services: 8LSPSVHU72. Once you have enrolled yourself, click on your name in the top right of your dashboard and select "Manage Family Protection" then "Add Family Member" to enroll your child. In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and an email account and will require enrollment by parent or guardian first. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

**What You Can Do:** We encourage you to enroll in the identity theft, restoration and credit monitoring services from Cyberscout. For additional resources available to you, please review the information contained in the pages following this letter.

## ADDITIONAL RESOURCES

**Order Your Minor's Free Credit Report.** To order your minor's free annual credit report (if one exists), visit www.annualcreditreport.com, call toll-free at (877) 322-8228, or complete the Annual Credit Report Request Form on the U.S. Federal Trade Commission's (FTC) website at www.ftc.gov and mail it to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA 30348-5281.

The three credit bureaus (Equifax, Experian, and TransUnion) provide free annual credit reports only through the website, toll-free number, or request form. You may also purchase a copy of your minor's credit report by contacting any of the credit reporting agencies below:

| | |
|---|---|
| Equifax www.equifax.com | (800) 685-1111 |
| Experian www.experian.com | (888) 397-3742 |
| TransUnion www.transunion.com | (800) 916-8800 |

**For Colorado, Georgia, Maine, Maryland, Massachusetts, New Jersey, Puerto Rico, and Vermont residents:** You may obtain one or more (depending on the state) additional copies of your minor's credit report, free of charge. You must contact each of the credit reporting agencies directly to obtain such additional report(s).

Upon receiving your minor's credit report, review it carefully. Errors may be a warning sign of possible identity theft. Here are a few tips of what to look for:

* Look for accounts you did not open.
* Look in the "inquiries" section for names of creditors from whom you have not requested credit. Some companies bill under names other than their store or commercial names; the credit bureau will be able to tell if this is the case.
* Look in the "personal information" section for any inaccuracies in information (such as home address and Social Security Number).

If you see anything you do not understand, call the credit bureau at the telephone number on the report. You should notify the credit bureaus of any inaccuracies in your minor's report, whether due to error or fraud, as soon as possible so the information can be investigated and, if found to be in error, corrected. If there are accounts or charges you did not authorize, immediately notify the appropriate credit bureau by telephone and in writing. Information that cannot be explained should also be reported to your local police or sheriff's office because it may signal criminal activity.

We encourage you to take advantage of these protections and remain vigilant for incidents of fraud and identity theft, including regularly reviewing and monitoring your minor's credit reports and account statements.

Scanned with CamScanner

Federal Trade Commission and State Attorneys General Offices. If you believe your minor is the victim of identity theft or have reason to believe your minor's personal information has been misused, you should immediately contact the Federal Trade Commission and/or the Attorney General's office in your home state, and local law enforcement. You may also contact these agencies for information on how to prevent or minimize the risks of identity theft.

You may contact the Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338).

For Maryland residents: You may contact the Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, www.oag.state.md.us, 1-888-743-0023.

For North Carolina residents: You may contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov, 1-877-566-7226 for more information about preventing identity theft.

For New York residents: The Attorney General may be contacted at: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; 1-800-771-7755; https://ag.ny.gov/.

For Connecticut residents: You may contact the Connecticut Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, 1-860-808-5318, www.ct.gov/ag.



Placing a Security Freeze. You have a right to place a "security freeze" on your minor's credit report (if one exists), at no charge, which will prohibit a consumer reporting agency from releasing information in your minor's credit report without your express authorization. The security freeze is designed to prevent credit, loans, and services from being approved in your minor's name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your minor's credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

You can place, temporarily lift, or permanently remove a security freeze on your minor's credit report online, by phone, or by mail. You will need to provide certain personal information, such as address, date of birth, and Social Security number to request a security freeze and may be provided with a unique personal identification number (PIN) or password, or both, that can be used by you to authorize the removal or lifting of the security freeze. Information on how to place a security freeze with the credit reporting agencies is also contained in the links below:

https://www.equifax.com/personal/credit-report-services/
https://www.experian.com/freeze/center.html
https://www.transunion.com/credit-freeze

As of February 20, 2023, the reporting agencies allow you to place a credit freeze through the online, physical mail and phone numbers and request that you provide the information listed below. Where possible, please consult the websites listed above for the most up-to-date instructions.

Scanned with CamScanner

| Reporting Agency | Online | Physical Mail | Phone Number |
|---|---|---|---|
| Equifax | *Freeze request may be submitted via your minor's myEquifax account, which you can create here:*<br><br>https://my.equifax.com/consumer-registration/UCC/#/personal-Info | **Mail the Equifax Freeze Request Form to:**<br><br>Equifax Information Services LLC<br>P.O. Box 105788<br>Atlanta, GA 30348-5788<br><br>**Form may be found here:**<br>https://assets.equifax.com/assets/personal/Security_Freeze_Request_Form.pdf | 888-298-0045 |
| Experian | *Freeze request may be submitted here:*<br><br>https://www.experian.com/ncaconline/freeze | **Mail the request to:**<br><br>Experian Security Freeze, P.O. Box 9554, Allen, TX 75013<br><br>**Request must include:**<br>• Full Name<br>• Social security number<br>• Complete address for last 2 years<br>• Date of birth<br>• One copy of a government issued identification card, such as a driver's license, state ID card, etc.<br>• One copy of a utility bill, bank or insurance statement, etc. | 888-397-3742 |
| TransUnion | *Freeze request may be submitted via your minor's TransUnion account, which you can create here:*<br><br>https://service.transunion.com/dss/orderStep1_form.page? | **Mail the request to:**<br><br>TransUnion<br>P.O. Box 160<br>Woodlyn, PA 19094<br><br>**Request must include:**<br>• Full Name<br>• Social security number<br>• Complete address | 888-909-8872 |

Fees associated with placing, temporarily lifting, or permanently removing a security freeze no longer apply at nationwide consumer reporting agencies.

Scanned with CamScanner

**Placing a Fraud Alert.** To protect your minor from possible identity theft, you have the right to place an initial or extended fraud alert on your minor's credit file at no cost. An initial fraud alert is a one-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If your minor is a victim of identity theft, your minor is entitled to an extended fraud alert, which is a fraud alert lasting seven years. You may obtain additional information from the FTC and the credit reporting agencies listed above about placing a fraud alert and/or security freeze on your minor's credit report.

**Protecting Against Medical Identity Theft.** The following practices can help to protect your minor from medical identity theft: (1) Only share your minor's health insurance cards with your minor's health care providers and other family members who are covered under your minor's insurance plan or who help your minor with your medical care, (2) Review your minor's "explanation of benefits statement" which you receive from your minor's health insurance company. Follow up with your minor's insurance company or care provider for any items you do not recognize. If necessary, contact the care provider on the explanation of benefits statement and ask for copies of medical records from the date of the potential access (noted above) to current date; and (3) Ask your minor's insurance company for a current year-to-date report of all services paid for your minor as a beneficiary. Follow up with your minor's insurance company or the care provider for any items you do not recognize.

**For More Information:** Should you have any additional questions, you may contact us at 1-833-570-2987 from 8:00 am to 8:00 pm Eastern time, Monday through Friday, excluding holidays. Brightline is committed to data protection. We regularly review our physical and electronic safeguards to protect personal information, and we will continue to take appropriate steps to safeguard personal information and our systems. We deeply regret any inconvenience or concern this may have caused.

Sincerely,
Brightline

31917124.1

Scanned with CamScanner